RAWLS, Acting Chief Judge.
In August, 1973, a group of citizens filed their application with the Comptroller to establish a bank in St. Cloud, Florida. The application received conditional approval from the then Comptroller Dickinson in December, 1974. In January, 1975, Comptroller Lewis revoked the conditional approval, requested updated economic data, and in November, 1975, denied the application. Subsequent to that denial, the petitioner sought administrative remedies pursuant to the provisions of Section 120.57(1), Florida Statutes. Respondent unsuccessfully sought through various pleadings filed in the circuit court, district court of appeal and supreme court to stay the administrative hearing. Ultimately, after hearing numerous witnesses and considering reams of exhibits, the administrative hearing officer entered a recommended order reciting findings of fact and conclusions of law. In *74 essence, the hearing officer, by her recommended order, found that:
1. The proposed bank’s downtown location would promote convenience and competitive advantages for the residents of St. Cloud.
2. The four existing banks in Osceola County (all members of statewide holding companies) enjoyed substantial profits and a considerable recent increase in deposits, and that the most recent competent economic evidence demonstrated a reasonable promise of success for the proposed bank as well as the existing banks.
3. The petitioners had met their burden of proof in demonstrating the adequacy of the capital structure for the proposed bank.
4. The name of the proposed bank would not be confused with existing banks; and
5. The bank would be housed in a suitable building for such an institution.
By the above findings, the hearing officer found that the petitioner had fulfilled five of the six requirements of Section 659.03(2), Florida Statutes, necessary for respondent to approve a bank charter application. The sixth and remaining • requirement, Section 659.03(2)(d), Florida Statutes, requires that an application not be approved until “the proposed officers and directors have sufficient banking or trust experience, ability and standing to assure reasonable promise of successful operation.” On this point, the hearing officer found:
“ . . . The evidence illustrates that the makeup of the proposed ten-man board of directors is well balanced with regard to local participation and banking experience and its members represent a cross-section of the community. The evidence adduced at the hearing cast some doubt upon the financial standing and ability of two members of the proposed board of directors and indicates that one of those two members lacks a good reputation as a businessman in the community. .. . ”
After restating that five of the six “mandatory” criteria had been met by the petitioner and commenting on the refusal of the respondent to participate in the administrative hearing, which had the effect of denying the hearing officer evidence concerning respondent’s established practices in applying Section 659.03(2)(d), Florida Statutes, the hearing officer concluded that:
“ . . . petitioner has demonstrated that it meets the criteria listed in § 659.-03(2)(a), (b), (c), (e) and (f), but has not shown that its proposed officers and directors have sufficient ability and standing to assure reasonable promise of successful operation, as required by subsection (d). However, before a final decision of denial on this ground is reached, fairness and equity require that certain factors be considered. These factors include the recent nature of the events concerning the two directors’ standing and ability, the Comptroller’s failure to reach a conclusion as to this criterion, the lengthy amount of time elapsing and the obvious expenses incurred by both parties in the processing of petitioner’s application and the fact that this criterion is substantially within the control of the applicant. Consideration of these factors leads the undersigned to conclude that it would only be fair and equitable to allow petitioner a short amount of time within which to review the financial standing and ability of its proposed directors and, if it so desires, submit an amended list to respondent for its review.”
The hearing officer recommended that disapproval be without prejudice to petitioner to file with the respondent, within 15 days of respondent’s final order, an amended list of directors and/or officers and that respondent render a decision upon this criterion within 20 days from the filing thereof.
By its final order rejecting the hearing officer’s recommendation that petitioner be allowed to amend its list of directors and/or officers, respondent seized upon paragraph (22) of the findings and concluded that “if all six (6) criteria must be met by an applicant, as a mandatory requirement before approval can be granted, then the failure of the applicant to meet any one of the statu *75 tory criterion similarly requires mandatory denial of the application.” Apparently, it is the Comptroller’s position that unless every “i” is dotted and “t” is crossed in the voluminous data required in an application for a bank charter, his duty, as a matter of law, requires disapproval of same.
Thus, the issue is crystallized into the sole question: Did the Comptroller abuse his discretion in not permitting petitioner to file within 15 days (which petitioner proffered) an amended list of directors and/or officers and that respondent render a decision upon this criteria within 20 days from the filing thereof?
In McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla.1st DCA 1977), Judge Smith, speaking for this court, authored an extensive opinion in which the discretion of the Comptroller, as head of the Department, was confirmed. However, the opinion emphasized how the Administrative Procedure Act affects the exercise of that discretion, viz: 1) the process by which disputed facts are found, 2) the adoption of rules by the agency of reflecting its policy statements of general applicability, and 3) the requirement that the agency explain the exercise of its discretion. In reviewing this extensive record, we find no indication that the Comptroller has adopted a rule or explained that agency’s incipient policy as to amending an application for a bank charter during the long and arduous journey of processing same. However, we do find in this record that the Comptroller, while this cause was pending in this court, permitted the amendment of another charter by the applicants therein.[1] Such evidence alone, when considered in light of the voluminous data initially required at the outset of applying for a charter, demonstrates that the Comptroller’s action in mandatorily denying the instant application constituted an abuse of discretion.
The petition for review is granted and the order is quashed with directions that the Comptroller entertain the proffered amendment to the subject application as to directors and/or officers within an expeditious time period, and if such persons are found to possess sufficient ability and standing to assure a reasonable promise of successful operation to grant the subject application.
MILLS and ERVIN, JJ., concur.

. The Comptroller, in an order dated March 15, 1977, regarding “IN RE: Northgate Bank of Tallahassee”, found, inter alia:
“ . . . said application be and the same hereby is approved for further processing subject to the following conditions:
4. The Chief Executive Officer and the Operations Officer of the bank must be approved by the Department of Banking and Finance prior to the opening of the bank.
7. Due to Mr. . . . fiduciary responsibilities with respect to his serving as trustee in bankruptcy . . . that he not serve as a director of Northgate Bank of Tallahassee during the pendency of his serving as trustee