396 So.2d 778 (1981)
FLORIDA DEPARTMENT OF TRANSPORTATION, Appellant,
v.
J. W. C. COMPANY, INC., and Department of Environmental Regulation, Appellees.
No. 00-501.
District Court of Appeal of Florida, First District.
March 27, 1981.
*780 James W. Anderson, Tallahassee, for appellant.
*781 Kenneth Oertel of Oertel & Laramore, Alfred W. Clark, Tallahassee, Adrian Bacon, St. Petersburg, for appellees.
Edward de la Parte, Jr. of de la Parte & Butler, Tampa, John T. Allen, Jr., St. Petersburg, for amicus curiae, Agrico Chemical Co.
William L. Earl and Paul H. Amundsen of Peoples, Earl, Smith, Moore & Blank, P.A., Miami, for amicus curiae, Freeport Sulphur Co.
LARRY G. SMITH, Judge.
The Department of Transportation (DOT) appeals an order entered by the State Department of Environmental Regulation (DER) denying DOT's application for a permit under the environmental laws, Chapter 403, Florida Statutes. DOT relies for reversal upon its claims: First, that DER erred in accepting the order of the hearing officer[1] recommending denial of the permit after a formal Section 120.57(1) hearing,[2] without either granting DOT's request to present additional evidence in support of its application directly to the Secretary of DER, or in the alternative remanding the case to the hearing officer for the purpose of receiving additional evidence; and secondly, that the proceedings before the hearing officer were not conducted in accordance with the essential requirements of law, because the hearing officer improperly placed the burden of proof upon DOT, rather than upon its opponents, appellees J.W.C. Company, Inc., and the other property owners who were objecting to the issuance of the permit sought by DOT.
Our consideration of the briefs of the parties and briefs of amici curiae[3], and our examination of the record lead us to conclude that reversible error has not been demonstrated in this appeal. We affirm.
As an incident to the proposed widening of Gulf Boulevard, Treasure Island, Pinellas County, DOT applied to DER for a permit to construct a complex source of air pollution, asserting in its application that pollutants in the form of automobile exhaust fumes along the proposed roadway would not exceed permissible standards adopted by DER[4]. DER's district office determined that "reasonable assurances" had been provided that the road widening project would not cause pollution in contravention of DER's standards[5], and it then issued its "letter of intent"[6], to issue the permit. Appellee J.W.C. Company, Inc. and other property owners filed a petition complaining, among other things, that the proposed widening would cause air pollution to a degree prohibited by Florida's law and regulations, and requested a "public" hearing[7]. The hearing officer to whom the proceeding was referred by DER held a hearing, received evidence from DOT and the objecting property owners, and entered his order recommending that issuance of the permit be denied.
In its application and in its presentation before the hearing officer, DOT sought to establish that the proposed highway improvements would not cause air pollution exceeding acceptable limits. To do this DOT used what is technically known as "computer modeling techniques," utilizing a computer model known as "Caline II." Traffic data was gathered by DOT to determine the future increase in traffic, and this data was processed through a computer program known as "Mobile I," to obtain predicted emissions of automobile pollutants. The data obtained from the Mobile I program was then fed into the Caline II model, along with data with respect to the "worst *782 case conditions" at the point along the roadway where the greatest concentrations of pollutants would be likely to occur. Based on the data utilized by DOT, including its assumptions concerning the "worst case conditions," the computer program produced results indicating highest concentrations of carbon monoxide[8] well within DER's standards. No evidence other than the computer model was presented by DOT.
Notwithstanding DOT's evidence based on the computer model, the hearing officer found that DOT had failed to provide reasonable assurances that the proposed modifications of Gulf Boulevard would not result in pollution in violation of DER's standards. The hearing officer pointed out in his order certain factors indicating that DOT had used "erroneous or insufficient data" in conjunction with the computer modeling. He emphasized particularly DOT's erroneous assumption of an "average speed" of 30 miles per hour for vehicles traveling through the busiest intersection  Gulf Boulevard and Treasure Island Causeway. He found that this assumed speed was not based on evidence from which any firm conclusion could be reached. He observed that the speed limit was 35 miles per hour at that intersection, but that there was also a stop light which would drastically reduce the average speed of vehicles traveling through the intersection. He also found that DOT's assumption of a 2 mile per hour wind speed for its "worst case conditions" could result in distorted data, and that a wind direction of 22 degrees from parallel was chosen for no apparently logical reason. Parallel winds, the hearing officer found, are generally thought to be the worst wind conditions for producing high carbon monoxide concentrations; but computer model results generally become distorted if parallel winds are assumed. Further, the "Caline II" program assumes the roadway is located on a grassy plain, a description which did not fit this particular locale; and there was a sharp conflict in the testimony on the extent to which developments on Gulf Boulevard would affect the result of the Caline II data. The hearing officer also questioned as "not necessarily valid" the assumption by DER personnel who considered the application that the modifications at the busy intersection would cause traffic to move at a faster rate than it does presently, thereby decreasing pollution in that area. Neither DER nor DOT presented evidence on whether the proposed modifications themselves would cause increased usage of the roadway, thus increasing emissions and pollution concentrations.
Based on his findings briefly summarized above, the hearing officer concluded that the data placed into the computer program was "not sufficient to assure any reasonable prediction" concerning pollutant concentrations. There was, he found, a "substantial possibility" that projected concentrations would exceed acceptable limits if proper data were utilized. Furthermore, because of the erroneous or insufficient data used by DOT in connection with carbon monoxide, predictions respecting concentrations of other automobile related pollutants could not be made.
Upon receipt of the hearing officer's recommended order DOT filed exceptions to the order and also filed a "Motion To Consider New Information," in which it requested permission to submit directly to the secretary of DER "new information" consisting of a graph and the affidavit of Dr. Gordon Morgan, one of the expert witnesses used in the administrative hearing. The graph and the affidavit purported to show that, based on recalculations using lower "average speeds," even as low as 15 miles per hour (half of the average speed previously assumed by DOT), the resulting pollutant predictions were well within acceptable standards. The motion for permission to introduce the graph and the additional expert evidence was denied.
*783 DER entered its Final Order, adopting the hearing officer's recommended order, denying the permit, denying DOT's request to consider new information, and (by implication) denying DOT's alternative request that the proceeding be remanded to the hearing officer for the purpose of considering the "new information" tendered by DOT.
Appellant DOT's first point, as indicated at the beginning of our opinion, is that DER's rejection of the "new information" tendered by it was error, in that such information had significant bearing on the issues dealt with by the hearing officer. DOT argues that rejection of this additional evidence constituted a violation of the Administrative Procedures Act, and a denial of fundamental fairness. Under DOT's theory of the case, the hearing officer simply made a "preliminary determination" that DOT had failed to provide "reasonable assurances" that DER's air quality standards would not be violated. DOT further reasons that because the administrative process is an "on-going inquiry," the secretary of DER, after receipt of the hearing officer's recommended order, is compelled to consider all information relevant to the issues  even evidence not presented at the hearing  before entering a final order.
DOT's argument relies to a great extent upon what we believe is a misreading of this court's opinion in Couch Construction Company v. Department of Transportation, 361 So.2d 172 (Fla. 1st DCA 1978). DOT urges that this court's remand to the agency in Couch "implicitly required the secretary either to discuss in his final order new information not previously addressed by the hearing, or himself to remand the case to DOAH for its entry of a new recommended order discussing the abolition of the pre-bid conference." We do not read in the Couch opinion anything to support the rule or principle DOT draws from it. What the majority opinion in Couch did hold is that both the order of the hearing officer and the order of the agency were deficient in that they failed to address the earlier decision by the agency to abolish mandatory attendance by bidders at a pre-bid conference. This was a factor that could have had significant bearing on the validity of the agency's decision to reject Couch's bid because he had failed to attend just such a conference.
The fact that the agency in Couch had abolished mandatory attendance was not in any respect "new information," as DOT assumes. This is evident from a reading of the hearing officer's order in the Couch case, quoted in full in the dissenting opinion. The order contains the finding that at "the hearing" (referring to a second pre-bid conference held in January after readvertising for bids), "the D.O.T. divulged that attendance at pre-bid conferences would no longer be required or mandatory ..." (Couch, dissenting opinion, at page 180). The abolition of mandatory pre-bid conferences was therefore a matter of record before the hearing officer, not something presented "after the fact" by any party. This significant difference easily distinguishes the Couch case from this one.
We find no provision in the statutes or the rules of procedure (Chapter 28, Model Rules of Procedure)[9] authorizing or permitting an agency head to "reopen" a hearing as suggested by DOT. The authority of the agency, upon receipt of the hearing officer's recommended order, is set forth in Section 120.57(1)(b)9, Florida Statutes. The statute provides the following basic alternatives: (1) The agency may adopt the recommended order as the agency's final order; or, (2) the agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the order, but may not reject or modify the findings of fact unless it determines from the record, and states with particularity in the order, that (a) the findings of fact were not based on competent substantial evidence, or (b) that the proceedings on which the findings were based did not comply with essential requirements of law. Neither this statute *784 nor the model rules of procedure[10] suggest the procedure urged by DOT of allowing the agency to receive additional or cumulative evidence on matters as to which evidence has already been received and evaluated by the hearing officer. Furthermore, this court has indicated, albeit indirectly, that this may not be done.[11] If one side were permitted to produce additional evidence, as suggested by DOT, then the other side would necessarily have to be given the same privilege, and each side would of necessity have to be given the right of confrontation and cross-examination of the additional witnesses, and possibly rebuttal. We do not envision the Administrative Procedures Act as permitting such a never-ending process.
The decision of this court in Public Bank of St. Cloud v. State, 351 So.2d 73 (Fla. 1st DCA 1977), also relied upon by appellant, does not mandate a result different than the one we reach in this case. We observe initially that there are fundamental dissimilarities between an application for a bank charter as in St. Cloud, and an application for a permit to construct a complex source of air pollution. But more significantly, the context in which the procedural issue arose in St. Cloud bears little resemblance to the issue under consideration here. There was no motion by the applicant in St. Cloud requesting the Comptroller to receive additional evidence. That alone distinguishes the cases. In St. Cloud, the hearing officer's order pointed out that evidence produced at the hearing cast some doubt concerning the financial standing and ability of two individuals named as members of the applicants' proposed Board of Directors. Explaining that the applicants otherwise met the required statutory criteria, and that the criteria regarding the suitability of the proposed Board of Directors was a matter "substantially within the control of the applicant," the hearing officer recommended that the applicant be permitted a short period of time within which to review its proposed directors, and, "if it so desires, submit an amended list" for the Comptroller's review. (Id. at page 74). The Comptroller summarily denied this recommendation and denied the application. This court on appeal held that the Comptroller abused his discretion in refusing the amendment, pointing out that the Comptroller, during the pendency of the appeal, had permitted the amendment of a proposed charter by other applicants. This fact alone, said the court, "when considered in the light of the voluminous data" required in a charter application, demonstrated that the denial of the charter constituted an abuse of discretion.
If this case involved an amendment to the application, in the St. Cloud sense, and if the hearing officer had recommended that such an amendment be allowed by DOT based on evidence presented at the hearing, then the ruling in St. Cloud would have some application. Conceivably, DER might by rule provide for amendment to the application during the hearing process, or it might by rule prohibit substantial amendment in "mid-proceeding" as indicated by this court with reference to bank applications in McDonald v. Department of Banking and Finance, 346 So.2d 569, at 584 (Fla. 1st DCA 1977). Footnote 14 of that opinion (Id. at 584) reveals that the Department of Banking and Finance had adopted such a rule. We perceive, however, a substantial difference between an amendment to an application pertaining to a matter "substantially within the control of the applicant," as in St. Cloud (Id. at 74) and the reopening of a hearing for the presentation of additional expert opinion evidence, as requested here by DOT. The mere chance that such additional evidence "might alter *785 the recommended order," as argued by DOT, does not furnish sufficient basis for a ruling by this court that the agency's order should be reversed. We note, furthermore, that DER's denial in this case was without prejudice to the right to submit a revised application to DER; and DER's order further stated that in the event of a new application and another Section 120.57(1) hearing, DER would request that the same DOAH hearing officer who conducted the proceeding below be assigned to hear the new application.
Further, as to DOT's first point, we find without merit its contention that Section 120.60(2), Florida Statutes, compels DER to accept additional information tendered by DOT, even after a formal Section 120.57(1) hearing. An agency's free-form action is regarded as preliminary, irrespective of its tenor. Capeletti Brothers Inc. v. Department of Transportation, 362 So.2d 346 (Fla. 1st DCA 1978).[12] The petition for a formal 120.57(1) hearing, as in this case, commences a de novo proceeding. See General Development Corp. v. Division of State Planning, 353 So.2d 1199 (Fla. 1st DCA 1977); Couch Construction Company v. Department of Transportation, supra; McDonald v. Department of Banking and Finance, supra. Section 120.57 proceedings "are intended to formulate final agency action, not to review action taken earlier and preliminarily." McDonald v. Department of Banking and Finance, supra, at 584.
Regarding DOT's contention that DER should have granted its request that the case be remanded to the hearing officer, we note initially that DOT concedes that neither Chapter 120, Florida Statutes, nor any other statutory provision expressly grants to an agency the authority to remand a proceeding to the hearing officer for consideration of further evidence. It urges, however, that such authority is inherent by reason of the nature of the agency and the functions it is empowered to perform.
This latter contention raises an issue not directly ruled upon in Florida, so far as we can determine. However, language in at least one Florida case gives support to DOT's position. In Venetian Shores Home and Property Owners v. Ruzakawski, 336 So.2d 399, at 401 (Fla. 3rd DCA 1976), the court stated:
We believe the entire tenor of the provisions of the Administrative Procedure Act having to do with the functions of a Hearing Examiner leads to the inescapable conclusion that the action of the agency, after a full hearing, is in the nature of a procedural review. Extensive provisions are made for remand or correction where the hearing is not complete or in accordance with the rules of due process, but there is no provision which suggests that the agency should make a new judgment upon the evidence. (Emphasis supplied)
It is not entirely clear whether the emphasized language in the above quote, considered in isolation, is referring to remand by the agency, or remand by the appellate court upon review of final agency action. However, since neither the statutes nor any rules provide for remand by the agency for further hearing by the hearing officer, prior to entry of the agency's final order, we conclude that the writer of the opinion was referring to the authority of the reviewing court to remand to the agency under provisions of Section 120.68(6), (8)-(13).
*786 However, without either accepting the proposition that an agency has inherent authority for "remand or correction where the hearing is not complete or in accordance with the rules of due process," or on the other hand foreclosing the possibility of the existence of such authority under exceptional circumstances[13], we are confident that the present case does not justify the exercise of such authority. In any event, the agency's decision to deny a remand would be a matter within the sound discretion of the agency itself, not subject to reversal by this court absent a showing of abuse of that discretion.[14] Substantial authority holds that there is no abuse of discretion in denying a rehearing (or remand) sought for the purpose of introducing evidence that could, in the exercise of due diligence, have been offered at the original hearing. 2 Am.Jur.2d, Administrative Law, § 537; Bowman Transportation Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). We do not by this reference insinuate that rehearing may be granted pursuant to Chapter 120, under any circumstances, after final agency action. This court has only recently held that rehearings cannot be granted. See Systems Management Associates Inc. v. State Department of Health and Rehabilitative Services, 391 So.2d 688 (Fla. 1st DCA 1980), and opinion on motion for reconsideration, 391 So.2d 688 (Fla. 1st DCA 1980).
Having found no reversible error on the first point presented by DOT, we now turn to its contention that reversible error occurred because the hearing officer erroneously placed the burden of proof upon DOT at the formal hearing. On this point, our review convinces us that no consideration of due process or fundamental fairness was breached by the hearing officer's allocation of the "burden of proof".
It is apparent that DOT's argument (and that of amicus curiae-Agrico) on this point proceeds upon the underlying premise that once DOT presented its application to DER and received DER's notice of intent to issue the permit, its "burden of proof" to show "reasonable assurances" as required by the rule[15] was discharged, and it had no further duty to "prove its case" a second time before the hearing officer at the 120.57(1) hearing.
We think that DOT's position on this point is faulty in two respects. The first is that it ignores the firmly established principle, already alluded to in this opinion, that the proceeding leading up to the issuance of DER's notice of intent is of the type that has been characterized as "free-form" action, and as such the decision produced is merely "preliminary." Capeletti Brothers Inc. v. Department of Transportation, supra. Under Rule 17-1.62(3), Florida Administrative Code, a letter of intent to issue or deny a permit is "proposed agency action," which becomes "final agency action" only if no hearing is requested by an objecting party within fourteen days of receipt of notice of the proposed action. Clearly, there was no final agency action by DER in this proceeding prior to the petitioning landowners' request for a hearing. Their request for a hearing commenced a de novo proceeding, which, as previously indicated, *787 is intended "to formulate final agency action, not to review action taken earlier and preliminarily." See McDonald v. Department of Banking and Finance, supra.[16]
This issue was addressed by the hearing officer in his recommended final order, in which he stated:
DOT and DER have contended that the fact that DER has issued a "Notice of Intent to Issue Permit," and that Petitioners thereafter requested a hearing, imposes upon the petitioners the burden of proof in this case. This contention, if accepted, would render the hearing a review of action already taken by DER. That is not the function of a hearing conducted in accordance with the provisions of Florida Statutes §§ 120.57(1), or 120.60. (Citing Couch Construction Company v. Department of Transportation, supra, and McDonald v. Department of Banking and Finance, supra.)
We are in accord with the hearing officer's understanding that in permitting proceedings a formal hearing is not a mere "review" of action already taken by DER.
The second fault we find in DOT's analysis of the burden of proof issue has more to do with a confusion of terms than any basic error of substance. We view it as fundamental that an applicant for a license or permit carries the "ultimate burden of persuasion" of entitlement through all proceedings, of whatever nature, until such time as final action has been taken by the agency. This burden is not subject to any "shifting" by the hearing officer, although it is entirely possible that a shifting of the burden of going forward with the evidence may occur during the course of the permitting proceeding. We think that part of the problem presented in this appeal stems from use of the term "burden of proof" to refer at times to the "burden of ultimate persuasion," and at other times to the "burden of going forward with the evidence." See Hughes, Florida Evidence Manual, Volume 1, Section 37 "Burden of Going Forward With Evidence," and Section 38 "Burden of Persuasion, In General."
A distinction in these terms was made by the court in In Re Estate of Ziy, 223 So.2d 42 (Fla. 1969), utilizing an explanation found in a decision from the State of Alabama (Id. at 43):
The term `burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a prima facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails.
It is obvious that, before accepting generalizations concerning the "burden of proof," one must look to the underlying statutory and regulatory framework under which a particular proceeding arises. For example, in Agrico Chemical Co. v. State, 365 So.2d 759 (Fla. 1st DCA 1978), this court held, in a rule challenge proceeding (Section 120.54, Florida Statutes), that the "burden is upon one who attacks the proposed rule to show that the agency, that adopts the rule, will exceed its authority; ... ." It must be noted, however, that the allocation of the burden in the Agrico case proceeded from the court's view that the rule-making function of an agency is "quasi-legislative action," and its activities in that respect "must be considered with deference to that function." (Agrico, supra, at 762)
*788 DER's Rule 17-4.07, Florida Administrative Code implements Section 403.087 (and other provisions), Florida Statutes. That rule, the validity of which is not challenged here, provides that the applicant for a permit bears the burden to "affirmatively" provide DER with "reasonable assurances" that pollution standards will not be violated by the proposed facilities. Under the statutory and regulatory framework the applicant is thus the party asserting the "affirmative" of the issue, both before the Department in preliminary proceedings and before the hearing officer in formal proceedings. In accordance with the general rule, applicable in court proceedings, "the burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an administrative tribunal." Balino v. Department of Health and Rehabilitative Services, 348 So.2d 349 (Fla. 1st DCA 1977).
It is clear that when the hearing officer used the phrase "burden of proof" in his recommended order (as quoted above) he was referring to the ultimate burden of persuasion. The language immediately following the above quoted portion of the order specifically makes this point:
The issue in this proceeding is whether DER should issue the permit. Clearly DOT has the affirmative obligation of establishing its entitlement to the permit. The fact that DER has issued a notice of intent to issue permit may render DOT's task in establishing its entitlement at a hearing somewhat easier. It does not, however, alleviate the responsibility.[17]
We think the procedure followed here was correct. DOT was required to "go forward with the evidence" initially. See General Development Corporation v. Florida Land and Water Regulatory Commission, 368 So.2d 1323 (Fla. 1st DCA 1979), in which this court found no error in the hearing officer's requirement that the developer present its case first (in an appeal under Section 380.07, Florida Statutes) since "that would facilitate an orderly presentation of evidence." This procedure is not inconsistent, in our opinion, with the notion that the petitioning property owners, who requested the hearing, also bear a "burden of proof," nor is a different order of proof required by Rule 17-1.59, Florida Administrative Code. This rule, entitled "Burden of Proof," provides that in license and variance proceedings before the Department, "the person requesting a hearing, variance, license, or other relief, shall have the burden of proof to establish, by a preponderance of the evidence, entitlement to the requested license, variance, or other relief." As a practical matter, where a notice of intent has been issued, we can conceive of no more orderly way for a formal hearing to be conducted than to have the applicant (who has the ultimate burden of persuasion) first present a "prima facie case." The hearing officer is not required to commence hearing the petitioning objector's evidence in such a proceeding with a blank record. We think it is essential, both for the benefit of the hearing officer and the petitioning objectors (to say nothing of the agency, and the appellate court) to have on record a basic foundation of evidence pertaining to the application so that the issues can be understood, and so that evidence directed to these issues by the petitioning objectors can be properly evaluated. At the very minimum, this preliminary showing should include the application, and the accompanying documentation and information relied upon by the agency as a basis for the issuance of its notice of intent. To what extent it would be advisable or necessary for this preliminary presentation by the applicant to be further expanded would depend, to a large extent, on the nature of the objections raised by the petitioners requesting a hearing.
We caution that we are not here laying out a blueprint governing either the exact procedure to be followed or the form or manner in which evidence shall be *789 presented in administrative hearings. As aptly pointed out by Judge Robert Smith in Bowling v. Department of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981), although "all questions of fact as distinguished from policy are determinable under the Administrative Procedures Act by substantial competent evidence," evidence "`appropriate in form' may differ from one proceeding to another depending on the `nature of the issues involved'" (citing Balino v. Department of Health and Rehabilitative Services, supra). Although the Bowling decision discusses the differentiation between evidence which "substantially" supports conventional forms of regulatory action and evidence which is required to "substantially" support a license revocation, we think common sense dictates that the principle of "differentiation" applies also both as to the form, and substantiality, of proof needed to support those aspects of a permit application that are uncontroverted, as opposed to those that are contested, in a Section 120.57(1) proceeding.
Being somewhat more specific, as a general proposition a party should be able to anticipate that when agency employees or officials having special knowledge or expertise in the field accept data and information supplied by the applicant, the same data and information, when properly identified and authenticated as accurate and reliable by agency or other witnesses, will be readily accepted by the hearing officer, in the absence of evidence showing its inaccuracy or unreliability. We emphasize again, however, that once a formal hearing is requested, there is no "presumption of correctness" in the mere fact that in preliminary proceedings the Department has issued its "notice of intent" to issue the permit that would relieve the applicant of carrying the "ultimate burden of persuasion." See General Development Corporation v. Florida Land and Water Regulatory Commission, supra; and O'Neil v. Pallot, 257 So.2d 59 (Fla. 1st DCA 1972).
Not every request for a formal Section 120.57(1) hearing may properly be granted, for it is clear that the petitioner must first demonstrate by appropriate pleading that there are disputed issues of fact requiring such a hearing. Blanchette v. School Board of Leon County, 378 So.2d 68 (Fla. 1st DCA 1979), United States Service Industries  Florida v. Department of Health and Rehabilitative Services, 383 So.2d 728 (Fla. 1st DCA 1980). We totally agree with the sentiments expressed by amicus curiae Agrico that no third party, "merely by filing a petition," should be permitted to require the applicant to "completely prove anew" all items in a permit application down to the last detail. The petitioner must identify the areas of controversy and allege a factual basis for the contention that the facts relied upon by the applicant fall short of carrying the "reasonable assurances" burden cast upon the applicant.[18] The "burden of proof" is upon the petitioner to go forward with evidence to prove the truth of the facts asserted in his petition. If the petitioner fails to present evidence, or fails to carry the burden of proof as to the controverted facts asserted  assuming that the applicant's preliminary showing before the hearing officer warrants a finding of "reasonable assurances"  then the permit must be approved. In making this preliminary showing of "reasonable assurances" before the hearing officer, the applicant is required to provide credible and credited evidence of his entitlement to the permit. This having been done, the hearing officer would not be authorized to deny the permit unless contrary evidence of equivalent quality is presented by the opponent of the permit.
Our research discloses a similar approach to this problem by the federal courts. In Environmental Defense Fund Inc. v. Environmental Protection Agency, 179 U.S.App. D.C. 43, 548 F.2d 998 (1976), the contention was made, in a proceeding filed by a manufacturer of pesticides (applicant and registrant) *790 and others for review of an order by the Environmental Protection Agency suspending registration of certain pesticides, that the "burden of proof" as to the safety of the pesticides rested upon the agency, rather than the manufacturer. The Federal Administrative Procedures Act, § 7(c), 5 U.S.C. § 556(d), provides, in part, that "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof." Judge Leventhal, writing for the court, rejected the manufacturer's argument that this provision placed the burden of proof upon the agency as the proponent of the order in question, and decided that as to that particular case, the statute in question "otherwise provided" (5 U.S.C. § 556 (d)), so as to clearly cast the burden of proof upon the manufacturer. In so holding, however, he examined decisions from other circuits and cited and relied upon the legislative history of Section 7(c) of the Federal APA[19]. He further proceeded to fully explore the concepts "burden of proof," "burden of coming forward with the evidence," and "ultimate burden of persuasion," and concluded (opinion page 1013, supplemental opinion on petition for rehearing):
As to the APA, our opinion holds that the "burden of proof" it casts upon the "proponent" is the burden of coming forward with proof and not the ultimate burden of persuasion.
By application of the principles and authorities discussed above we determine that the hearing officer committed no error in his allocation of the burden of proof in these proceedings, and that his recommended order, approved by DER, properly addresses this issue. We find no merit in appellant's contention that DER's allocation of the burden of proof, as that phrase is used to refer to the "ultimate burden of persuasion," to the applicant, represents a "change in policy."
The order appealed from is AFFIRMED.
McCORD and WENTWORTH, JJ., concur.
NOTES
[1] Department of Administration (DOAH).
[2] Administrative Procedures Act, Chapter 120, Florida Statutes.
[3] Amici curiae filed briefs solely on the question of whether DOT or J.W.C. Company, Inc., and the other property owners had the burden of proof in the administrative proceedings below.
[4] Rule 17-2.06, Florida Administrative Code.
[5] Rule 17-4.07, Florida Administrative Code.
[6] Rule 17-1.62, Florida Administrative Code.
[7] Rule 17-1.62(2) makes reference to hearing under Section 120.57, Florida Statutes.
[8] It is apparently accepted knowledge that concentrations of automobile pollutants other than carbon monoxide are not as susceptible to prediction using computer modeling techniques as is carbon monoxide. However, carbon monoxide is frequently utilized as a "controlling pollutant," and it is considered reasonable, generally, to base a prediction of excessive concentrations of other pollutants on whether or not excessive carbon monoxide can be predicted.
[9] The rules were rewritten, effective March 23, 1980.
[10] See particularly, "(C) Post-Hearing Procedures," Part II, Chapter 28, Florida Administrative Code, effective March 23, 1980. There was no comparable provision under the prior rules.
[11] See McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), at page 586, stating that "further consideration" by the Department, of specific statutory criteria required to be established by applicants for banking authority, "is foreclosed by the absence of record evidence which might justify the Department in discarding the hearing officer's recommended findings."
[12] Neither the prior rules, nor the amended model rules of procedure, Chapter 28, Florida Administrative Code, effective March 23, 1980, apply to agency investigations "preliminary to agency action." New Rule 28-5.101 makes Chapter 28 applicable, specifically, "to all proceedings under Section 120.57, as well as those initiated under 120.60 or 120.54(16) which are required to be conducted in accordance with Section 120.57, F.S., to the extent that an agency has not adopted its own specific rules of procedure..." New Rule 28-5.110(1) provides, however, that the model rules do not apply to "agency investigations or to determinations of probable cause preliminary to agency action," and subsection (3) of that rule provides that an investigation or determination of probable cause "is a non-adversary executive function to discover or procure evidence as part of the fact-finding function of an agency." Compare General Development Corporation v. Florida Land and Water Adjudicatory Commission, 368 So.2d 1323 (Fla. 1st DCA 1979).
[13] For example, in Manatee County v. Florida Public Employees Relations Commission, et al., 387 So.2d 446 (Fla. 1st DCA 1980), PERC remanded to the hearing officer for consideration of new evidence restricted to issues raised by a change in circumstances occurring subsequent to the formal hearing before the hearing officer (county took over utility, thus raising question of inclusion of utility employees in proposed bargaining unit). However, the validity of the remand order was not made an issue on appeal; and, moreover, a special case can be made for PERC's remand authority because of PERC's unique statutory responsibility and authority in connection with defining employee bargaining units, which is also reflected in PERC's rules governing hearings in such proceedings. Viewed in this context, PERC's remand procedure can be cited only as illustrating the exercise of such authority under "exceptional circumstances," and not as evidence of a general rule allowing remand by virtue of "inherent authority" possessed by the agency.
[14] See Public Bank of St. Cloud v. State, supra; Couch Construction Company v. Department of Transportation, supra.
[15] Rule 17-4.07, Florida Administrative Code.
[16] The APA's hearing requirements are designed to give affected parties "an opportunity to change the agency's mind." Couch Construction Company v. Department of Transportation, supra, at page 176.
[17] The hearing officer also found that, whether the burden of proof is placed upon DOT as the applicant, or upon the petitioners as the opponents of the notice of intent to issue permit, the permit should not be issued.
[18] No contention is made here that the petition filed by the objecting property owners is deficient in any respect.
[19] Portions of the legislative history relied upon by Judge Leventhal, although referring to a provision of the Federal APA as to which there is no Florida counterpart, are included here, because they can be of assistance in reaching a clearer understanding of these concepts. A pertinent paragraph of the Senate Committee provides:

That the proponent of a rule or order has the burden of proof means not only that the party initiating the proceeding has the general burden of coming forward with a prima facie case but that other parties, who are proponents of some different result, also for that purpose have a burden to maintain. Similarly the requirement that no sanction be imposed or rule or order be issued except upon evidence of the kind specified means that the proponents of a denial of relief must sustain such denial by that kind of evidence. For example, creditable and credited evidence submitted by the applicant for a license may not be ignored except upon the requisite kind and quality of contrary evidence. No agency is authorized to stand mute and arbitrarily disbelieve creditable evidence. Except as applicants for a license or other privilege may be required to come forward with a prima facie showing, no agency is entitled to presume that the conduct of any person or status of any enterprise is unlawful or improper. (S.Rep.No. 752, 79th Cong., 1st Sess. 22 (1945), reprinted in S.Doc. 248 at 208.)
This view is confirmed by the House Report which provides:
In other words, this Section means that every proponent of a rule or order or the denial thereof has the burden of coming forward with sufficient evidence therefor; and in determining applications for licenses or other relief any fact, conduct, or status so shown by creditable and credited evidence must be accepted as true except as the contrary has been shown or such evidence has been rebutted or impeached by duly credited evidence or by facts officially noticed and stated. (Emphasis added) (H.R.Rep. 1980, 79th Cong., 2d Sess. 34 (1946), reprinted in S.Doc. 248 at 270).