ZEHMER, Judge.
Leonard D. Cordes appeals a final order of the Department of Environmental Regulation denying his application to renew a permit to operate a .0075 MGD wastewater treatment facility located at the Jefferson Nursing Center in Jefferson County, Florida. Cordes raises four points on appeal. We affirm.
Cordes is the owner of Jefferson Nursing Center, a nursing home that houses sixty residents and has fifteen employees. On August 15, 1988, he filed a “short form” application to renew a permit previously issued by the Department in 1983 to operate a .0075 MGD wastewater treatment facility to serve the nursing home. Cordes failed to respond to the Department’s request for additional information about the application, and the Department denied his application and required that a “long form” application be submitted. Cordes filed a “long form” application, and the Department denied it for the following six reasons:
(1) Adequate assurance has not been provided to insure that the design hydraulic loading rates shall be maintained as required by Rules 17-610.423 Florida Administrative Code.
(2) The reclaimed water distribution system is not designed in accordance with sound engineering practice as required by Rule 17-6.070(l)(a), Florida Administrative Code.[1]
(3) Appropriate warning signs are not posted around the site as required by Rule 17-610.418, Florida Administrative Code.
(4) An adequate reclaimed water storage system is not provided as required by Rule 17.610.414, Florida Administrative Code.
(5) Adequate buffer zones between the edge of the wetted area and the site property line are not maintained as required by Rule 17.610.421(2) Florida Administrative Code.
(6) An adequate buffer zone is not provided from the edge of the wetted area to an existing potable water supply well *654 as required by Rule 17-610.421(3), Florida Administrative Code.
Cordes was granted a formal administrative hearing, and after receiving evidence from the parties, the hearing officer issued an order recommending that “a Final Order be entered which denies the permit to operate a .0075 MGD wastewater treatment facility with reclaimed water applied by spray irrigation.” The Department entered its final order rejecting all but one of the exceptions Cordes filed to the recommended order, and as so modified adopted the recommended order with directions that the permit application be denied.
Cordes’s first point contends that the Department lacked legal authority to deny the application based on reasons numbered one and two above, and that the Department is estopped from denying the application based on reason number two because the Department previously recommended that Cordes change the reclaimed water distribution system from a “spray system” to a “soaking hose” system.
We reject Cordes’s argument that the Department improperly denied the application based on reason number one (failure to provide adequate assurance that the design hydraulic loading rates will be maintained as required by rule 17-610.423) due to his failure to designate the “wetted areas” on the application. Cordes presented expert testimony that the field has the capacity of handling nutrients in an amount more than seven times the amount that is being applied by this system, but the Department expert testified at the hearing that an applicant desiring to provide adequate assurance that the design hydraulic loading rates would be properly maintained must provide information detailing the spray field crop and the pattern of reclaimed water distribution over the field, which Cordes failed to indicate on the application. While Cordes’s application indicated the location of the spray heads, it did not indicate the disbursement pattern of the spray heads or the type of crop in the field. In the face of this deficiency, the Department acted within its power in initially denying the permit for this stated reason. As the permit applicant, Cordes had the ultimate burden of persuasion of entitlement to the permit, and the Department’s failure to request this type of information in the application itself did not relieve Cordes of that burden at the formal hearing. See State of Florida Department of Transportation v. J.W.C. Co., Inc., 396 So.2d 778, 787 (Fla. 1st DCA 1981) (the applicant for a permit carries the “ ‘ultimate burden of persuasion’ of entitlement through all proceedings, of whatever nature, until such time as final action has been taken by the agency.”) On this record, we cannot say that either the hearing officer or the Department erred in ruling that Cordes had not carried that burden.
With respect to reason number two, the evidence presented at the hearing was sufficient to prove that the reclaimed water distribution system at Cordes’s facility was not designed in accordance with sound engineering practice as required by rules 17-610.400, 17-610.419, 17-610.423. Both the Department’s expert and Cordes’s own expert testified that the system that Cordes was using was “unsanitary” and inadequate. Nor do we find any merit in Cordes’s argument that the Department should be estopped from denying the application based on this reason because his expert testified that the suggestion to use the “soaking hose” system, which utilizes several spray heads and a soaker hose, came from the Department, and that Cordes has relied on that suggestion by installing the system. First, although Cordes’s expert testified that the suggestion to change the system came from a Department employee, that Department employee testified that he could not recall telling Cordes’s expert to change the system and that he would not “as a matter of policy, make a specific policy and tell someone that this is what we recommend for this facility.” After considering this conflicting evidence, the hearing officer found the testimony of the Department employee to be more credible, leaving no proven representation on which to base an estoppel argument. Second, even if such represen *655 tation were made, it would have amounted to a mistaken statement of law that could not be used as a basis for applying the principle of equitable estoppel against the Department under the circumstances of this case. See Department of Revenue v. Hobbs, 368 So.2d 367, 369 (Fla. 1st DCA 1979). (“The general rule is that administrative officers are not estopped through mistaken statements of the law.”). See also State Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981).
Cordes’s second point contends that reason number four for denial, that the reclaimed water storage system is inadequate, is contrary to the Department rules. Cordes concedes that the reclaimed water storage system fails to satisfy the storage requirements of rule 17-610.414(2)(c), but argues that there was evidence presented at the hearing that would have supported a finding of exemption from that rule, relying on the permit the Department issued for the facility in 1983 based on the present storage system and the Department’s failure to inform the nursing center that a larger tank would be required upon renewal.
As Cordes correctly concedes, the evidence presented at the hearing clearly indicates that the system did not have the capacity to store three times the amount of the average daily flow of the nursing center as required by rule 17-610.414(2)(c). Rule 17-610.414(1) provides for an exemption from the storage requirement “where it is documented in the engineering report that an alternative system (e.g., permitted surface water discharge, deep wells) is incorporated into the system design to ensure continuous facility operation in accordance with the requirements of Rule 17-600, F.A.C.” (emphasis added). Although Cordes’s expert testified that he felt that the storage capacity system was adequate to deal with the reclaimed water and dispose of it in a sanitary and environmentally healthy way, no engineering report was submitted as required by rule 17-610.414(1), nor was there any other evidence that the Department had previously granted the facility an exemption. The issuance of the October 4, 1983, permit, approximately five and one-half years prior to the adoption of rule 17-610.414 on April 4, 1989, does not establish that the facility was granted an exemption from the requirements of the subsequently adopted rule. Among the conditions listed on the 1983 permit were two conditions requiring the facility to operate backup and auxiliary facility or similar systems when necessary to achieve compliance with changes in Department rules. Also, section 403.087, Florida Statutes (1989), permits the Department to issue new permits upon the expiration of old permits only in accordance with Department rules and regulations then existing. Because there was competent substantial evidence that the reclaimed water storage system failed to satisfy the requirement of rule 17-610.414(2)(c) and was not granted an exemption, we can find no error in the Department’s denial of the permit on this ground.
Cordes’s third point contends that the Department could not deny the permit based on reason number five (inadequate buffer zone between the edge of the wetted area and the site property line as required by rule 17-610.421(2))[2] because the Department rendered this requirement moot by advising the facility to change its irrigation system to the soaking hose system, and because the application itself did not require the applicant to designate the wetted areas. These arguments are likewise without merit. Cordes’s own expert admitted that the facility failed to satisfy the 100-foot buffer zone requirement, and that the engineer instead chose a 2.8 acre buffer requirement based on his opinion that the 100-foot buffer zone requirement was not necessary for the facility. He also testified that, however, the spray heads could be re-oriented to meet the 100-foot buffer zone requirement. As mentioned above, *656 the fact that the application did not require the applicant to indicate the wetted areas does not relieve the applicant of its ultimate burden of persuasion of entitlement to the permit in respect to this issue. Even if the Department had advised the facility to change its irrigation system, that advice could not serve as a basis for an estoppel under the circumstances of this case.
Cordes’s fourth point contends that the Department could not deny the permit based on reason number six, a lack of proper distance from “potable” water supply wells as required by rule 17-610.421(8), because the application did not request any information about the distance between the wetted areas and potable water supply wells, but only requested information on “shallow water supply wells,” and because the facility was granted an exemption from this requirement. However, we conclude that competent substantial evidence supports the denial of the permit based on reason number six. Rule 17-610.421(3) provides:
(8) A 500-foot setback distance shall be provided from the edge of the wetted area to potable supply wells that are existing or have been approved by the Department or by the Department of Health and Rehabilitative Services (but not yet constructed); Class I surface waters; or Class II surface waters approved or conditionally approved for shellfish harvesting. This distance shall be reduced to 200 feet if facility Class I reliability is provided in accordance with Rule 17-610.421(1), F.A.C.
Rule 17-610.421(1) provides:
The permittee shall maintain setback distances between the wetted site area subject to land application and surface waters and potable water supply wells to ensure compliance with water quality and drinking water standards, and to protect the public health, safety and welfare. All systems shall be designed to minimize adverse effects resulting from noise, odor, lighting and aerosol drift....
The evidence presented at the hearing, through the testimony of the Department’s expert, through Cordes’s expert, and in the permit application itself, established that the facility failed to satisfy the 500-foot setback requirement. The permit application indicates a buffer zone of only “200 feet minimum from edge of wetted area to shallow water supply well, Class I waters, or Class II waters approved or conditionally-approved for shellfish harvesting.” Although Cordes’s expert testified that the well was deep and that the “possibility of contamination ... to this particular drinking water well ... is not there,” absent an exemption under rule 17.610.421(1), this testimony is insufficient to require, as a matter of law, that the Department exempt the facility from the requirements of rule 17.610.421(3), which does not make any distinction between shallow wells and deep wells.
The evidence of record also fails to support Cordes’s contention that the facility was granted an exemption from the setback requirements. The September 2, 1983, letter from the Department, which Cordes argues exempted the facility from the setback requirement, states in pertinent part:
This is in response to your request of August 9, 1983 that the monitoring wells at the Jefferson Nursing Center be exempt from ground water monitoring requirements of condition # 11 of operating permit D033-2105.
Your request is hereby granted, as there are no shallow water supply wells or surface water bodies within 1,000 feet or 500 feet, respectively, of the project site.
(Emphasis added). The letter, which was given approximately five years prior to the adoption of rule 17.610.421(3), exempted the facility from “ground water monitoring requirements” only because there were no shallow wells or surface water bodies within 1000 feet or 500 feet of the project site. The evidence presented at the hearing establishes that after this exemption was granted, the department adopted rule 17-610.421 and the facility constructed a potable well within 200 feet from the edge of the wetted area. The Department did not *657 err in denying the application on this ground.
AFFIRMED.
BOOTH and WOLF, JJ., concur.

. This citation is in error. The relevant provisions are rules 17-610.400, 17-610.419, and 17-610.423, Florida Administrative Code.

. Rule 17-610.421(2) provides:
Slow-rate land application systems shall maintain a distance of 100 feet from the edge of the wetted area to buildings that are not part of the treatment facility, utilities system, or municipal operation; or to the site property line.