625 So.2d 831 (1993)
James D. YOUNG, Sr., et al., Petitioners,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, et al., Respondents.
No. 76911.
Supreme Court of Florida.
September 9, 1993.
David Paul Horan, David Paul Horan & Associates, P.A., Key West, for petitioners.
G. Steven Pfeiffer, General Counsel, and David L. Jordan and Sherry A. Spiers, Asst. Gen. Counsels, Dept. of Community Affairs, and David M. Maloney, Florida Land and Water Adjudicatory Com'n, Office of Governor, Tallahassee, for respondents.
HARDING, Justice.
We have for review Young v. State, Department of Community Affairs, 567 So.2d 2, 3 (Fla.3d DCA 1990), in which the Third District Court of Appeal certified that it "passed upon a question of great public importance by holding that, in an appeal by the state land planning agency pursuant to section 380.07, Florida Statutes (1987), the burden of persuasion, and the burden of going forward, rested on the applicant for the permit." We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and quash the decision below.
In 1985, James and Olivia Young (the Youngs) applied for land clearing permits on three separate acreage tracts, totalling a little more than seven acres, located in Monroe County, Florida. The Youngs sought the permits in order to remove vegetation from and raise nursery stock on their Big Pine Key property. In 1988, Monroe County issued the permits to the Youngs. Because the permits constituted development orders, Monroe County transmitted copies of the *832 permits to the Department of Community Affairs (Department), as required by section 380.07(2), Florida Statutes (1987).[1] Pursuant to section 380.07(2), the Department appealed those orders to the Florida Land and Water Adjudicatory Commission (Commission) and requested that the development orders be reversed as "illegal and violative of the provisions of the Monroe County Land Development Regulations and Comprehensive Plan."
As provided in section 380.07(3), Florida Statutes (1987),[2] the matter was scheduled for a hearing before a hearing officer pursuant to chapter 120. Prior to the hearing, the hearing officer ruled that the burden of proof would be on the Youngs, as applicants, to show their entitlement to the permits in question.
At the hearing, the Youngs refused to participate in the proceeding and failed to present any evidence to the hearing officer. Finding that the Youngs "failed to present a prima facie case and have failed to carry their burden of proof in this proceeding[,]" the hearing officer recommended that the permits be denied. The Youngs filed exceptions to the recommended order with the Commission, which denied the exceptions after hearing argument. In its final order, the Commission noted that by refusing to participate at the hearing the Youngs "unilaterally foreclosed their opportunity both to present a preliminary showing sufficient to make out a prima facie case and to satisfy their ultimate burden of persuasion." In light of those circumstances, the Commission agreed with the hearing officer that the permits should be denied.
On appeal, the Third District Court of Appeal affirmed the order of the Commission. The district court held that an applicant for a license or permit has the ultimate burden of persuasion of entitlement through all proceedings, until final action is taken by the agency. 567 So.2d at 3. The district court also determined that the hearing officer "had the discretion to order that the applicants would have the burden of going forward." Id. On a suggestion of certification, the district court certified its holding as passing on a question of great public importance.
This case presents the issue of which party bears the burden of ultimate persuasion and the burden of going forward with the evidence in an "appeal" to the Florida Land and Water Adjudicatory Commission pursuant to section 380.07. Section 380.07(1) creates the Commission. Subsection (2) provides that whenever any local government issues any development order in any area of critical state concern[3] or in regard to any development of regional impact, the owner, developer, appropriate regional planning agency, or the state land planning agency may appeal the order to the Commission within 45 days *833 after the order is rendered. However, as provided in subsection (3), prior to issuing an order the Commission "shall hold a hearing pursuant to the provisions of chapter 120." § 380.07(3), Fla. Stat. (1987). By designating the procedure in subsection (2) an appeal while providing that the hearing in subsection (3) will be pursuant to the provisions of chapter 120, the Legislature has created an internal ambiguity as to what type of proceeding is encompassed by section 380.07, and, consequently, which party bears the burdens of persuasion and going forward in the proceeding.
An appeal involves review by an appellate court of the decision of a lower court. The burden is on the appellant to show reversible error. City of Miami v. Hollis, 77 So.2d 834 (Fla. 1955). Moreover, the judgment below is clothed with a presumption of correctness that the appellant must overcome. Id. However, a chapter 120 proceeding is a hearing de novo intended "to formulate final agency action, not to review action taken earlier and preliminarily." McDonald v. Department of Banking & Fin., 346 So.2d 569, 584 (Fla. 1st DCA 1977).
Section 380.07 was enacted by the Legislature in 1972 as part of an act relating to land and water management. See ch. 72-317, § 7, at 1177, Laws of Fla. The legislative history of section 380.07 sheds little light on the statute's ambiguous language. However, chapter 72-317, section 7, at 1177, Laws of Florida, did provide that the "commission shall hold a hearing pursuant to the provisions of part II, chapter 120, Florida Statutes," while "[d]ecisions of the commission are subject to judicial review under part III of chapter 120, Florida Statutes." (Emphasis added.) At the time this language was written, part II of chapter 120 established the "adjudication" procedure, with adjudication defined as an "agency proceeding for the formulation of an order." § 120.21(2), Fla. Stat. (1971). Part III provided for judicial review of agency orders. § 120.31, Fla. Stat. (1971). By referring to these specific parts of chapter 120, it appears that the Legislature intended that the "appeal" to the commission be a proceeding for formulating agency action, which would then be subject to judicial review.
Moreover, we note that the Legislature amended section 380.07 in 1978 in an Administrative Procedure Act conformance bill. See ch. 78-95, § 15, at 236, Laws of Fla. The act was intended to place the affected provisions of the Florida Statutes into conformity with chapter 120. Ch. 78-95, § 1, at 147, Laws of Fla. The 1978 amendment evidences a clear legislative intent that section 380.07 be consistent with the administrative procedures of chapter 120.
In Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981), the Lee County Board of County Commissioners denied a developer's request for approval of a development of regional impact. The developer appealed that order to the Florida Land and Water Adjudicatory Commission pursuant to section 380.07. This Court characterized the hearing requested by the developer as a "hearing de novo." Id. at 1377. Thus, although section 380.07(2) provides for an "appeal" of a development order in any area of critical state concern or for any development of regional impact, this term must be interpreted in its "broadest, non-technical sense ... to mean merely an application to a higher authority." Transgulf Pipeline Co. v. Board of County Comm'rs, 438 So.2d 876, 878 (Fla. 1st DCA 1983) (interpreting word "appeals" in section 380.07(3)), review denied, 449 So.2d 264 (Fla. 1984). We agree with the reasoning of the First District Court of Appeal in Transgulf Pipeline that to interpret "appeal" as used in this statute in its most narrow technical sense would render the statute illogical, as chapter 120 makes no provision for an "appeal" in the technical sense and section 380.07(3) specifically requires the Commission to hold a hearing pursuant to the provisions of chapter 120 prior to issuing any order.
Having determined that the proceeding before the Commission is a de novo hearing, we now turn to the placement of the burdens in such a proceeding. The general rule is that, apart from statute, the burden of proof is on the party asserting the affirmative of an issue before an administrative tribunal. *834 Balino v. Department of Health & Rehabilitative Servs., 348 So.2d 349 (Fla. 1st DCA 1977).
In Estuary Properties, which involved a hearing before the Commission pursuant to section 380.07, this Court explained that the state had the initial burden of going forward with the evidence by showing "that an adverse impact will result if a permit is granted." 399 So.2d at 1379. However, "[o]nce there is sufficient evidence of an adverse impact, it is neither unconstitutional nor unreasonable to require the developer to prove that the proposed curative measures will be adequate." Id.
Although Estuary Properties illustrates the shifting of the burden of going forward with the evidence that may occur in a section 380.07 proceeding, that case did not involve the same underlying statutory framework as the instant case. In Estuary Properties, a developer was denied approval for a development of regional impact (DRI) pursuant to section 380.06, Florida Statutes (Supp. 1974). The developer appealed the order to the Commission and a de novo hearing ensued. Upon review, this Court determined that the state had the initial burden of showing that the proposed DRI would have an adverse impact in light of section 380.06(8). Under that statutory framework, the appropriate local government was required to give notice and hold a hearing on the application for development approval. § 380.06(7), Fla. Stat. (Supp. 1974). Upon receipt of that notice, the regional planning agency was required to submit to the local government a report and recommendations on the regional impact of the development, including any resulting adverse impact. § 380.06(8), Fla. Stat. (Supp. 1974). In addition, the statute also charged the local government with determining the extent to which the development unreasonably interfered with the applicable state land development plan. § 380.06(11)(a), Fla. Stat. (Supp. 1974). Thus, the underlying statutory framework clearly placed an initial burden upon the state to show that an adverse impact would result if the permit were granted.
In contrast, the instant case involves an area of critical state concern which falls under the statutory framework of sections 380.05 and 380.0552, Florida Statutes (1987). Before an area is designated as one of critical state concern, the Department must identify the "dangers that would result from uncontrolled or inadequate development of the area." § 380.05(1)(a), Fla. Stat. (1987). An area of critical state concern may only be designated for an area having a significant impact upon "environmental or natural resources of regional or statewide importance," "historical or archaeological resources, sites ... or districts," or a "major public facility or other area of major public investment[.]" § 380.05(2)(a), (b), (c), Fla. Stat. (1987). Moreover, if a proposed development of regional impact falls within an area of critical state concern, "the local government shall approve it only if it complies with the land development regulations therefor under s. 380.05 and the provisions of this section." § 380.06(13), Fla. Stat. (1987) (emphasis added). § 380.05(16) also provides that "[n]o person shall undertake any development within any area of critical state concern except in accordance with this chapter." Thus, the Legislature has made a statutory determination that development in an area of critical state concern will have an adverse impact if the development is not in accordance with chapter 380.
The Legislature designated the Florida Keys Area as an area of critical state concern in the "Florida Keys Area Protection Act." § 380.0552(1), Fla. Stat. (1987). Pursuant to the Act, the enactment, amendment, or rescission of any land development regulation or element of a local comprehensive plan in the Florida Keys Area only becomes effective upon approval by the Department. § 380.0552(9), Fla. Stat. (1987). Thus, the Legislature has also statutorily determined that development in the Florida Keys Area will have an adverse impact if not in accordance with chapter 380, the local development regulations, and the local comprehensive plan.
However, unlike the statutory framework at issue in Estuary Properties, neither section 380.0552 nor section 380.05 addresses which party carries the burden in a section *835 380.07 proceeding.[4] Thus, as explained in Balino, the burden of proof rested on the party asserting the affirmative before the administrative tribunal.
In reaching the conclusion that the Youngs carried the burden of proving entitlement to the permits, the hearing officer, the Commission, and the district court all relied upon the First District Court of Appeal's decision in Florida Department of Transportation v. J.W.C. Co., 396 So.2d 778 (Fla. 1st DCA 1981). In J.W.C., the court stated that it is "fundamental that an applicant for a license or permit carries the `ultimate burden of persuasion' of entitlement through all proceedings, of whatever nature, until such time as final action has been taken by the agency." 396 So.2d at 787. In J.W.C., the Department of Transportation (DOT) sought a permit from the Department of Environmental Regulation (DER) relating to a road widening project in Pinellas County. After DER's district office issued a "letter of intent" to issue the permit, property owners objected to the proposed permit and requested a hearing. Following a section 120.57(1) hearing, DER entered a final order denying the permit. On appeal, the district court concluded that DOT, as the applicant for the permit, carried the ultimate burden of persuasion and the initial burden of going forward with the evidence. 396 So.2d at 787-88.
While the instant case involves a development permit, we find that the statutory framework relating to areas of critical state concern distinguishes this case from J.W.C. Unlike DER, Monroe County is not an agency for purposes of chapter 120. See § 120.52(1)(c), Fla. Stat. (1987) (units of government not enumerated in subsections (a) and (b), including counties and municipalities, are only agencies to the extent they are expressly made subject by general or special law or existing judicial decisions). Thus, the development order issued by Monroe County did not constitute proposed agency action or any other type of agency action. The effect of the Department's "appeal" to the Commission was to "stay the effectiveness" of an otherwise valid order. § 380.07(2). In contrast, DER's letter of intent to issue the permit in J.W.C. was simply preliminary agency action and DOT remained an applicant for the permit until final agency action was taken by DER. 396 So.2d at 786-87.
In the instant case, the Department requested that the Commission reverse the development orders as "illegal and violative of the Monroe County Land Development Regulations and Comprehensive Plan." Thus, the Department was the party asserting the affirmative that the development orders were not in accordance with chapter 380 as required by sections 380.05 and 380.0552. Consequently, the ultimate burden of persuasion and the initial burden of going forward with the evidence rested on the Department. As explained in Estuary Properties, after the Department presents its evidence that the development orders were not in accordance with chapter 380, the Youngs will have the opportunity to present evidence to support their position.
We answer the certified question by finding that when the state land planning agency initiates a proceeding before the Florida Land and Water Adjudicatory Commission pursuant to section 380.07, Florida Statutes (1987), that agency carries both the ultimate burden of persuasion and the burden of going forward. For the reasons discussed above, we quash the decision below and remand for a new hearing before a hearing officer.
It is so ordered.
OVERTON and GRIMES, JJ., concur.
BARKETT, C.J., concurs specially with an opinion, in which SHAW and KOGAN, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which SHAW, J., concurs.
SHAW, J., concurs in result only.
McDONALD, J., dissents with an opinion.
*836 BARKETT, Chief Justice, specially concurring.
I agree that the burden of persuasion and the initial burden of going forward should be borne by the party appealing the local government's order, which in this case is the State. Accordingly, as in any appeal, the appealing party must overcome the initial presumption of correctness of the decision below. However, because the hearing pursuant to an appeal is governed by chapter 120, the Florida Administrative Procedure Act, the hearing may encompass more than just the record below. This conclusion is compelled by the legislative intent as derived from reading the relevant statutes in pari materia. See Singleton v. State, 554 So.2d 1162, 1163 (Fla. 1990) (requiring courts to harmonize conflicting language in statutes to the greatest extent possible).
This issue arises because of the possible conflict created by section 380.07(2), Florida Statutes (1987), which suggests a traditional court-type appeal on the one hand, and by section 380.07(3), Florida Statutes (1987), which requires a hearing pursuant to chapter 120, on the other.
Section 380.07(3) provides in relevant part:
Prior to issuing an order, the Florida Land and Water Adjudicatory Commission shall hold a hearing pursuant to the provisions of chapter 120.

(Emphasis supplied.)
Florida caselaw generally has interpreted section 120.57, which relates to adjudicatory hearings, as requiring de novo proceedings. McDonald v. Department of Banking & Fin., 346 So.2d 569, 584 (Fla. 1st DCA 1977). Because section 380.07(3) refers to chapter 120, the majority concludes that the hearing in section 380.07 appeals must be de novo. Majority op. at 833. This approach reads out any meaning of the legislatively delineated differences between this proceeding and every other section 120.57 proceeding, as well as the plain language of section 380.07(2), which provides:
Whenever any local government issues any development order in any area of critical state concern, or in regard to any development of regional impact, copies of such orders as prescribed by rule by the state land planning agency shall be transmitted to the state land planning agency, the regional planning agency, and the owner or developer of the property affected by such order. Within 45 days after the order is rendered, the owner, the developer, an appropriate regional planning agency by vote at a regularly scheduled meeting, or the state land planning agency may appeal the order to the Florida Land and Water Adjudicatory Commission by filing a notice of appeal with the commission. The 45-day appeal period for a development of regional impact within the jurisdiction of more than one local government shall not commence until after all the local governments having jurisdiction over the proposed development of regional impact have rendered their development orders. The appellant shall furnish a copy of the notice of appeal to the opposing party, as the case may be, and to the local government which issued the order. The filing of the notice of appeal shall stay the effectiveness of the order and shall stay any judicial proceedings in relation to the development order, until after the completion of the appeal process.

(Emphasis supplied.) This is the language of the traditional appellate process, not state agency administrative proceedings. Had the Legislature intended to require the normal chapter 120-type hearing, it would not have used words of art in section 380.07(2) so clearly contemplating an "appeal."
Moreover, chapter 120 itself, when it refers to section 380.07 proceedings, also uses the word "appeal." Section 120.57(1)(b)3., Fla. Stat. (1987) ("When the Florida Land and Water Adjudicatory Commission receives a notice of appeal pursuant to s. 380.07, the commission shall notify the division within 60 days of receipt of the notice of appeal if the commission elects to request the assignment of a hearing officer.") (Emphasis supplied).
Thus, by specifically discussing section 380.07 "appeals," section 120.57 suggests that those hearings are not the same as the ones generally conducted under the section.
*837 Chapter 120 was designed to deal with state agencies, not local governments. In a typical adjudicatory hearing pursuant to section 120.57, a state agency has taken some action affecting the substantial interests of a party. Section 120.57(1), Fla. Stat. If the party requests a hearing and if there are disputed issues of material fact, a formal hearing de novo is conducted, usually by the independent corps of hearing officers at the Division of Administrative Hearings. Id.; see also McDonald, 346 So.2d at 584. Under such circumstances, it is clear that the de novo hearing is designed "not to review action taken earlier and preliminarily," but to formulate agency action. Id.
In contrast, in proceedings under section 380.07, a local government has issued a development order. Local governments are not agencies for purposes of the Administrative Procedure Act absent an express provision in general or special law or existing judicial decisions. Id., § 120.52(1)(c); see also Booker Creek Preservation, Inc. v. Pinellas Planning Council, 433 So.2d 1306 (Fla. 1st DCA 1983); Amerson v. Jacksonville Electric Auth., 362 So.2d 433 (Fla. 1st DCA 1978).[5]
Although section 380.07(3) clearly provides that review of local government development orders in areas of critical state concern shall be pursuant to chapter 120, nothing in section 380.07 or in the relevant area of critical state concern statutes specifically makes a local government an agency for chapter 120 purposes. Nor has my research uncovered any judicial decision making local governments issuing development orders in areas of critical state concern "agencies" for chapter 120 purposes.
To the contrary, courts construing the role of local governments in the context of section 380.07 often have emphasized the primary role of local governments.[6]See, e.g., Friends of the Everglades, Inc. v. Board of County Commr's, 456 So.2d 904, 907 (Fla. 1st DCA 1984) (finding that legislative intent of chapter 380 is that "land regulation should remain as close to those affected as possible"), review denied, 462 So.2d 1108 (Fla. 1985); Transgulf Pipeline v. Board of County Commr's, 438 So.2d 876, 879 (Fla. 1st DCA 1983) ("If the local government entity conducts its hearing with adequate procedural safeguards, such a hearing would presumably be considered full and complete by the Commission or its hearing officer and admitted into evidence at the section 120.57 hearing."), review denied, 449 So.2d 264 (Fla. 1984); Manatee County v. Estech Gen. Chem. Corp., 402 So.2d 1251, 1255 (Fla.2d DCA 1981) ("Chapter 380 ... does not remove local land use decisions from the control of local governing bodies. It simply shifts the review of those decisions from the circuit court to the Land and Water Adjudicatory Commission."), review denied, 412 So.2d 468 (Fla. 1982).
Thus, because local governments are not "agencies" but consist of independent elected officials, I believe the Legislature in sections 380.07(3) and 120.57(1)(b)(3) outlined a different type of proceeding than is usual under section 120.57.
As the majority notes, the underlying statutes in this case relate to areas of critical state concern generally and specifically designate the Florida Keys as one of those critical areas. Sections 380.05, .0552, Fla. Stat. (1987). I recognize that the Legislature has directed that more restrictions be placed on development within areas of critical state concern and that the state Department of Community Affairs plays a much greater role in overseeing development in those areas than in other cities and counties. See, e.g., Askew v. Cross Key Waterways, 372 So.2d 913 *838 (Fla. 1978) (discussing the creation of the areas of critical state concern program). Therefore, I agree with the majority that this statutory framework is relevant. Majority op. at 834-835. However, I also believe that the plain language of sections 380.07 and 120.57 has meaning, is relevant, and can be harmonized in accordance with the requirements of Singleton.
I would harmonize the various statutes as follows: By using the word "appeal" in both sections 380.07(2) and 120.57(1)(b)(3), the Legislature indicated that the appellant has the ultimate burden of persuasion and that the decision by the local government is entitled to a presumption of validity. The burden of going forward, while borne initially by the party seeking review, may shift back and forth depending on the evidence presented. See Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981).[7] However, by stating that the hearing should be held pursuant to chapter 120, the Legislature also has indicated that the hearing should encompass more than just the record below. Specifically, new evidence can be presented, and the hearing officer has the opportunity to issue a recommended order based on consideration of all of the issues. The Florida Land and Water Adjudicatory Commission then reviews the recommended order before issuing a final order, which constitutes final action for purposes, then, of judicial review. Section 120.68, Fla. Stat. (1987).
This approach harmonizes and gives meaning to all of the relevant statutory provisions and is not inconsistent with the case cited by the majority using the word "appeal" in section 380.07 in a broad, nontechnical sense. Majority op. at 833; Transgulf Pipeline, 438 So.2d at 878-79 ("[T]he decision to be made by the Commission or its hearing officer is not whether to conduct a de novo evidentiary hearing as opposed to a classic appellate review, but whether certain evidence is to be admitted at the Chapter 120 hearing.").
SHAW and KOGAN, JJ., concur.
KOGAN, Justice, specially concurring.
Both Justice Harding and Chief Justices Barkett's views are reasonable, but on the whole I lean toward the latter. I also would suggest that the legislature revisit the statutes in question to clarify what was intended in cases such as this.
SHAW, J., concurs.
McDONALD, Justice, dissenting.
I would approve the decision under review. When one seeks a development permit in an area designated as one of critical state concern, I believe the burden of going forward and the burden of persuasion always rests upon the applicant through all hearings.
NOTES
[1] Section 380.07(2), Florida Statutes (1987), provides:

Whenever any local government issues any development order in any area of critical state concern, or in regard to any development of regional impact, copies of such orders as prescribed by rule by the state land planning agency shall be transmitted to the state land planning agency, the regional planning agency, and the owner or developer of the property affected by such order. Within 45 days after the order is rendered, the owner, the developer, an appropriate regional planning agency by vote at a regularly scheduled meeting, or the state land planning agency may appeal the order to the Florida Land and Water Adjudicatory Commission by filing a notice of appeal with the commission. The 45-day appeal period for a development of regional impact within the jurisdiction of more than one local government shall not commence until after all the local governments having jurisdiction over the proposed development of regional impact have rendered their development orders. The appellant shall furnish a copy of the notice of appeal to the opposing party, as the case may be, and to the local government which issued the order. The filing of the notice of appeal shall stay the effectiveness of the order and shall stay any judicial proceedings in relation to the development order, until after the completion of the appeal process.
[2] Section 380.07(3), Florida Statutes (1987), provides in pertinent part:

Prior to issuing an order, the Florida Land and Water Adjudicatory Commission shall hold a hearing pursuant to the provisions of chapter 120.
[3] Section 380.0552, Florida Statutes (1987), designates the Florida Keys Area as an area of critical state concern. Thus, the permits issued to the Youngs by Monroe County were subject to the procedures of section 380.07.
[4] The Department argues that section 380.05(16), Florida Statutes (1987), statutorily places the burden of proof on the person seeking development approval. We do not agree that section 380.05(16) addresses the burden of proof, but instead read the provision as defining the procedure for undertaking development in an area of critical state concern.
[5] I recognize that section 120.52(1)(b) makes each "commission, regional planning agency, board, district, and authority" described in chapter 380 (among other chapters) an agency for purposes of chapter 120. That section does not, however, refer to local governments described in chapter 380.
[6] I recognize that many of the cases construing section 380.07 involve orders relating to developments of regional impact rather than to areas of critical state concern. Both types of appeals are governed by sections 380.07(2) and 380.07(3), Florida Statutes. I would not reach the issue of whether the separate underlying statutory bases of these types of local government decisions lead to differences in the burden of proof in the chapter 120 hearing.
[7] The majority cites Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1377 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981), for the proposition that this Court characterized the 380.07(2) hearing requested by the developer in that case as a "hearing de novo." Majority op. at 833. I believe the characterization was simply a statement of fact regarding what had been done and not a determination of whether that type of hearing was proper.