662 So.2d 1330 (1995)
GOLFCREST NURSING HOME, Appellant,
v.
STATE of Florida, AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 94-4077.
District Court of Appeal of Florida, First District.
November 14, 1995.
*1331 Alfred W. Clark, Tallahassee, for Appellant.
Karel Baarslag, Senior Attorney, Agency for Health Care Administration, Tallahassee, for Appellee.
SMITH, Senior Judge.
Golfcrest appeals an order of the State of Florida Agency for Health Care Administration ("AHCA") denying an interim Medicaid reimbursement rate increase. We reverse.
Golfcrest Nursing Home (Golfcrest) filed an application for interim rate increase based upon costs incurred to correct deficiencies noted during licensure surveys conducted by AHCA in 1990 and 1991. The AHCA denied the interim rate increase based upon its interpretation of the Florida Title XIX Long-Term Care Reimbursement Plan Medicaid (the Plan).
First, with respect to claimed capital costs, the AHCA interpreted the Plan to require utilization of the chronologically-most-recent cost report in calculating the threshold one (1%) per cent comparison formula for determining whether such capital costs warranted an interim rate increase. The most recent cost report was, in this case, different from the cost report from which the base rate was derived.
Second, with respect to patient costs, the AHCA interpreted the Plan to require the applicant to prove, as part of its prima facie case, that its claimed costs were consistent with what a reasonable and prudent buyer would pay. Because AHCA determined that Golfcrest failed to meet its burden of proof in this regard, the requested rate increase was denied.
Golfcrest is a properly licensed nursing home located in Broward County, Florida. Golfcrest participates in the Florida Medicaid Program and provides inpatient nursing home services to Medicaid-eligible persons. Pursuant to the program, Golfcrest is entitled to reimbursement in accordance with the Florida Title XIX Long-Term Care Reimbursement Plan (the "Plan"), which has been adopted and incorporated by reference in Rule 10C-7.0482, Florida Administrative Code. The Appellee, AHCA, is the state agency responsible for administration and implementation of the Florida Medicaid Program.
*1332 In May of 1990 and July of 1991, the Department of Health and Rehabilitative Services (now AHCA) conducted its annual licensure surveys at Golfcrest. During those surveys, AHCA identified several licensure deficiencies, which it ordered Golfcrest to correct. Failure to correct the deficiencies would have resulted in sanctions against Golfcrest's nursing home license, including administrative fines, a reduction in licensure rating, other civil penalties, and a reduction in Medicaid reimbursement.
Thereafter, Golfcrest incurred certain property costs and costs due to patient care and operating changes which it attributes to correction of the licensure deficiencies. Accordingly, by letter dated 6 January 1992, Golfcrest submitted to AHCA a request for an interim rate increase for patient care costs, operating costs, and property costs incurred or to be incurred to comply with existing state regulations and to correct identified licensure deficiencies.[1] After an exchange of correspondence, AHCA denied Golfcrest's interim rate request by letter dated 15 June 1992, as revised by letter dated 1 July 1992.
Golfcrest challenged the proposed agency action by filing its Petition for Formal Administrative Hearing on 28 February 1993. The matter was referred to the Division of Administrative Hearings, and a formal hearing was held on 22 February 1994. On 3 August 1994, the Hearing Officer entered her Recommended Order, recommending partial approval of the interim Medicaid reimbursement request.
In its final order, the AHCA adopted in substantial part the Hearing Officer's recommendations. First, it disapproved an interim rate increase related to property costs, on the ground that such costs did not meet the threshold test of equalling at least one (1%) percent of Golfcrest's total applicable reimbursement rate.
On this point, the parties agree that, if the cost of renovations which Golfcrest incurred to correct licensure deficiencies caused a change of 1% or more in Golfcrest's existing total per diem reimbursement rate, Golfcrest would be entitled to an interim per diem rate increase. The parties also agree that, at the time of submission and review of Golfcrest's interim rate request, Golfcrest's existing total per diem reimbursement rate was $71,2565. That was derived by dividing costs by the number of patient days from the applicable cost report period, which was, at that time, the July 31, 1990 Medicaid Cost Report.[2] During that cost report period, Golfcrest experienced 22,676 patient days.
The AHCA further determined, and Golfcrest agrees, that Golfcrest was entitled to $16,356 in interim property costs for building improvement depreciation. The next step required by the interim rate regulations is to determine whether $16,356, calculated on a per diem basis, will increase Golfcrest's existing total reimbursement rate of $71.2565 by at least 1% (or.7126). If one divides $16,356 by 22,676 patient days, the result is $.7213 (or greater than 1%).
However, the AHCA interpreted the Plan to require it to divide the costs incurred by the number of patient days set forth in the 1991 Plan, or 23,010 patient days. The AHCA based its selection of 23,010 patient *1333 days on its interpretation of Section V.B. of the Plan, which provides, in pertinent part, that per diems are to be calculated "by dividing ... costs ... by patient days from the latest cost report." Using 23,010 patient days, the property costs incurred by Golfcrest equal $.7108 (or less than the threshold one (1%) per cent).
The AHCA erred in relying on the phrase "patient days from the latest cost report" to the exclusion of other relevant language in the Plan, most notably, the introductory paragraph to the interim rate-setting section (Section IV. J.) of the Plan. Section IV. J. provides, in pertinent part, that "[r]equests for rate adjustments to account for increases in property related costs due to capital additions, expansion, replacement, or repairs or for allowable lease cost increases shall not be considered in the interim between cost report submission, except for the addition of new beds or if the cost of the specified expansion, addition, replacement, allowable lease cost increase or repair would cause a change of 1 percent or more in the provider's total per diem reimbursement rate." (Emphasis added).
From this language, it appears that the "latest cost report" would, under normal circumstances, be the basis for determining the applicable total reimbursement rate which is being sought to be revised "in the interim between cost report submission." In other words, under normal circumstances, the "latest cost report" and the cost report upon which the total per diem reimbursement rate would be based would be one and the same.
In this case, however, because of an agency-imposed "freeze" on rates, the "latest cost report" was not used to calculate the January 1, 1992 semester per diem reimbursement rate. The effect of the rate freeze was to carry forward the total Medicaid per diem reimbursement rate which was in effect on July 1, 1991. Thus, the July 1, 1991 rate for Golfcrest was based upon its July 31, 1990 year-end cost report.
A reasonable interpretation of the Plan compels the conclusion that the AHCA cannot, in imposing a "rate freeze", arbitrarily use one document as the "latest cost report" for purposes of calculating the total Medicaid per diem reimbursement (or "base") rate, then use another document as the "latest cost report" for purposes of calculating the interim rate comparison formula. Such a result would be both inconsistent, and inequitable in this case.
The AHCA next argues that there is substantial, competent evidence to support its denial of entitlement to an interim rate increase based upon the cost of certain nonproperty items incurred by Golfcrest to correct licensure deficiencies. The agency based its denial upon its determination that Golfcrest failed to meet its burden of proving that the cost of the items was an "allowable cost" which did not exceed "what a prudent and cost-conscious buyer would pay", citing Section III.C. of the plan.
It is well-settled that the appellate court will give deference to any interpretation by an agency that falls within the permissible range of statutory interpretations. Sunshine Jr. Stores, Inc. v. State, Dep't of Environmental Regulation, 556 So.2d 1177 (Fla. 1st DCA 1990), review denied, 564 So.2d 1085 (Fla. 1990), citing Dep't of Professional Reg., Bd. of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984); Dep't of Admin. v. Nelson, 424 So.2d 852, 858 (Fla. 1st DCA 1982); State Dep't of Health & Rehab. Servs. v. Framat Realty, Inc., 407 So.2d 238, 241 (Fla. 1st DCA 1981). An agency's interpretation of its own rules and regulations is entitled to great weight, and shall not be overturned unless the interpretation is clearly erroneous. Orange Park Kennel Club, Inc. v. State, Dep't of Business & Professional Regulation, 644 So.2d 574 (Fla. 1st DCA 1994). This is true even if that interpretation is not the sole possible interpretation, the most logical interpretation, or even the most desirable interpretation. State, Bd. of Optometry v. Florida Soc'y of Ophthalmology, 538 So.2d 878, 885 (Fla. 1st DCA 1988).
As applied to this case, the AHCA has interpreted its definition of "allowable *1334 costs" as requiring the petitioner in an interim rate application to show, as part of its proof of entitlement to the increased rate, that its claimed costs do not exceed "what a prudent and cost-conscious buyer pays for a given service or item." Golfcrest has taken a view opposite to that of the agency, relying on the second sentence of Section III.C. of the Plan, which provides: "If costs are determined by HRS utilizing the Title XVIII principles of reimbursement, HIM-15, and this plan, to exceed the level that a prudent buyer would incur, then the excess costs will not be reimbursable under the plan."
Pursuant to Golfcrest's interpretation, in order to disallow the costs, the agency would have the burden of proving that the claimed costs exceeded the level that a prudent buyer would incur. This is contrary to the general rule of law that the burden of proof is on the party asserting the affirmative of an issue, in this case, entitlement to an interim rate increase. See Young v. Dep't of Community Affairs, 625 So.2d 831 (Fla. 1993); McDonald v. Dep't of Professional Regulation, Bd. of Pilot Com'rs, 582 So.2d 660, 670 (Fla. 1st DCA 1991). Further, the buyer is in the best position to show the reasonableness of its proposed purchase price, reflected in any informal survey, or formal bid process, which a prudent buyer would be expected to perform.
The question before us is whether, given the nature of the controversy and the facts actually in dispute, Golfcrest carried the burden of proof to the extent required to make a prima facie case. See, Florida Dept. of Transp. v. J.W.C. Co., Inc., 396 So.2d 778 (Fla. 1st DCA 1981) (evidence required to meet competent substantial evidence test may differ in form and substantiality from one proceeding to another, depending on issues that are uncontroverted, as opposed to those that are contested). Here, the record shows that the AHCA proposed to approve two of the patient care items requested by Golfcrest, in the absence of any documentation showing that the costs were not excessive. Furthermore, the only testimony on this point at the hearing was that of Golfcrest's expert in health care accounting and reimbursement. That expert testified regarding the meaning of "allowable costs", and opined that the subject costs were "allowable costs" within the meaning of Provider Manual HIM-165 [the Federal Medicare guidelines, which provide guidance in assessing Medicaid reimbursement issues].[3]
It is our opinion that Golfcrest, through the testimony of its expert, made a prima facie showing that its claimed patient care and operating cost items were "allowable costs". Having done so, the burden shifted to the AHCA to prove that such costs were not consistent with what a reasonable and prudent buyer would pay. Because Golfcrest's expert presented an uncontroverted opinion that the costs sought by Golfcrest were "allowable costs", the AHCA erred in denying an interim rate increase on the basis that Golfcrest had not met its initial burden of proof.
For the foregoing reasons, the order on appeal is REVERSED and REMANDED for entry of an order consistent with this opinion.
KAHN and DAVIS, JJ., concur.
NOTES
[1] The Florida Title XIX Long Term Care Reimbursement Plan (the "Plan") specifically authorizes the payment of an interim reimbursement rate for increases in property-related costs and increases in patient care and operating costs due to compliance with existing state regulations. The Plan also contains provisions which authorize a nursing home participating in the Medicaid Program to request an interim change in its Medicaid reimbursement rate when it incurs property-related costs which would change its reimbursement rate by one percent (1%), or when it incurs costs resulting from patient care or operating changes made to comply with existing state regulations and said costs are at least $5,000 or one percent (1%) of its total reimbursement rate. In applying for an interim rate increase based upon increases in property costs, a petitioner is not required to demonstrate that the costs were incurred to comply with existing state regulations.
[2] Because of an agency-imposed "freeze" on rates, Golfcrest's applicable per diem rate was based upon the 1990 cost report data. The effect of the "freeze" is not challenged on this appeal.
[3] The AHCA concurred in the Hearing Officer's ruling that Golfcrest could not rely upon its expert testimony to meet its burden of proof regarding the reasonableness of its claimed costs. It erred in characterizing the expert's testimony as a mere "conclusion of law", discrediting its value as a prima facie showing that the claimed costs were "allowable" (and thus, reasonable) as that term is used in the Medicaid reimbursement system.