714 So.2d 493 (1998)
The ENVIRONMENTAL TRUST and Sarasota Environmental Investors, Inc., Appellants,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellant,
v.
The ENVIRONMENTAL TRUST, Sirrom Resource Funding, L.P., Southeast Solutions, Inc., Environmental Corporation of America, Inc., Sirrom Environmental Funding, LLC, and Reservoir Capital Corp., Appellees.
Nos. 96-4341, 97-0255, 97-0770 and 97-3909.
District Court of Appeal of Florida, First District.
June 3, 1998.
Rehearing Denied July 24, 1998.
*495 E. Gary Early and Christopher R. Haughee of Akerman, Senterfitt & Eidson, Tallahassee, for Appellants Environmental Trust and Sarasota Environmental Investors, Inc.
W. Douglas Beason, Assistant General Counsel and Rebecca Grace, Assistant General Counsel, Tallahassee, for Appellee Florida Department of Environmental Protection.
Thomas K. Maurer of Foley & Lardner, Tallahassee, for Appellees Sirrom Resource Funding, L.P. and Sirrom Environmental Funding, LLC.
Matt Mathews of Matt Mathews P.A., Tallahassee, for Appellee Southeast Solutions, Inc.
Bradford C. Vassey, General Counsel, Tampa, for Appellee Environmental Corporation of America, Inc.
Ralph A. DeMeo and Michael P. Petrovich of Hopping, Green, Sams & Smith, Tallahassee, for Appellee Reservoir Capital Corporation.
PADOVANO, Judge.
In these consolidated appeals we review four final orders relating to the administration of the Inland Petroleum Trust Fund. Environmental Trust and Sarasota Environmental Investors challenge an order of the Department of Environmental Protection denying in part their applications for reimbursement for cleaning up petroleum contamination, as well as a related order by an administrative law judge authorizing the Department's use of incipient non-rule policies to deny the applications. The Department appeals an order by another administrative law judge invalidating a new rule adopting the policies in question, and a second order in the same case awarding attorney's fees to Environmental Trust and Sarasota Investors. We affirm the first two orders concerning the denial of the reimbursement applications, and reverse both of the remaining orders in the subsequent rule challenge proceeding.

I.
The Inland Petroleum Trust Fund was established in 1986 to encourage the restoration of groundwaters and surface waters polluted by the discharge of petroleum and related products from underground storage systems. A private party who rehabilitates a contaminated site may file an application for reimbursement of the expenses incurred in the rehabilitation. If the application is approved, the state reimburses the party from the funds held in the trust. The Department administers the program and has adopted rules implementing the statute.
Environmental Trust and Sarasota Investors filed forty-five reimbursement applications for rehabilitation work completed on various dates from July 1994 through February 1995. The cost of the work was financed in each case by a factoring arrangement. Generally, factoring is the process of purchasing *496 accounts receivable at a discount. In these cases, the factoring company advanced capital at a discounted rate to the subcontractor, the contractor, and an investment company like Environmental Trust or Sarasota Investors, and then applied for reimbursement from the state based on the face amount of the invoices submitted at each level of the process. As a result, the cost of the discount for providing investment capital to the contractor, subcontractor, and investment company, was passed along to the state as a part of the cost of the rehabilitation.
In at least thirty of the projects, the site rehabilitation work was completed by a subcontractor, Tower Environmental Services Inc., under an agreement with the general contractor, Gator Environmental Services, Inc. Gator had no substantial involvement with these projects until the work was completed. At that point, Gator performed a site inspection for which it claimed a fifteen percent markup over the amount of the invoice submitted by Tower in its reimbursement application. Environmental Trust and Sarasota Investors were the investment companies, and they served primarily as a conduit for the capital provided by factoring companies such as American Factors Group Inc. and American Environmental Enterprises, Inc.
The Department had a rule in place concerning the necessary qualification for reimbursement but the rule did not expressly address the factoring scheme in the present case. Consequently, the Department began to gather more information from Environmental Trust and Sarasota Investors over a period of months to determine the proper approach to the review of the applications. Then, in a memorandum dated April 21, 1995, the Department stated its position on factoring discounts. In this memorandum, the Environmental Manager explained that the amount represented by a factoring discount is not reimbursable because it amounts to interest on the face amount of the invoice. By internal electronic mail dated October 20, 1995, the Department also took the position that it would allow a markup for the general contractor only if the general contractor performed an integral management function in the rehabilitation of a site. Accordingly, the Department deducted the discounts and the contractor's fifteen percent markup in all of the pending applications.
Between September of 1995 and February of 1996, Environmental Trust and Sarasota Investors filed forty-five petitions for administrative hearings under section 120.57(1), Florida Statutes (1995), to contest the denial of these claimed expenses. They also filed petitions in each case under section 120.535, Florida Statutes (1995), for a determination whether the memoranda regarding the factoring and markup policy had the effect of unadopted rules. The two sets of cases, including the individual petitions in each set, were consolidated for hearing.
On October 8, 1996, Administrative Law Judge Suzanne Hood entered two orders in the consolidated cases. The first was an order in the section 120.57(1) proceeding determining that the applications for reimbursement were properly denied. This order was adopted by the agency and is the subject of an appeal by Environmental Trust and Sarasota Investors (No. 96-4341). Judge Hood's second order was a final order in the section 120.535 proceeding. In those cases, the judge held that the Department's policies regarding factoring and the general contractor markup had the effect of unadopted rules. However, the order dismissed the petitions, based on the finding that the Department had initiated rulemaking to adopt the policies as rules as soon as it was practical or feasible. Environmental Trust and Sarasota Investors appeal that order, as well (No. 97-255). The Department cross appeals the order, contending that the memoranda did not have the effect of unadopted rules.
On March 22, 1996, while the consolidated proceedings were pending before Judge Hood, the Department published its first notice of proposed rulemaking. The notice attached a proposed rule adopting the factoring and markup policies that were the subject of the Department's previous memoranda. The final notice of the proposed rulemaking was published on September 27, 1996.
Following Judge Hood's decision, Environmental Trust and five other investment companies filed petitions under section 120.56, *497 Florida Statutes, to determine the validity of the rule addressing the factoring and markup issues. This proceeding was assigned to Administrative Law Judge P. Michael Ruff. On February 12, 1997, Judge Ruff entered a final order declaring the proposed rule invalid. The judge held that the rule could not be applied retroactively because the statute creates a vested right to reimbursement. Additionally, the judge determined that the rule could not be applied prospectively because the Legislature had since eliminated the reimbursement program of the Inland Petroleum Trust Fund.[1] The Department appeals this order declaring the rule invalid (No. 97-770).
Environmental Trust and the five other investment companies participating in the rule challenge then filed a motion for costs and attorneys' fees. They argued that they were entitled to fees by statute because they had obtained a declaration that the rule was invalid. Because the controversy concerning the proposed rule continued to exist after October 1, 1996, Judge Ruff applied the attorney's fee provision in section 120.595(2), Florida Statutes (Supp.1996). Ultimately, the judge granted the motion and awarded costs and attorneys' fees in favor of the investment companies. The Department appeals this order, as well (No. 97-3937).

II.
We find no error in the Department's final order in the proceeding under section 120.57(1), Florida Statutes (1995), denying in part the applications for reimbursement. This order must be affirmed because it is based on competent substantial evidence. Additionally, we agree with the result of the order by Administrative Law Judge Suzanne Hood in the proceeding under section 120.535, Florida Statutes (1995). However, we reject the main conclusion of law in this order and affirm it on other grounds. In our view, it was not necessary to excuse the Department's action on the ground that it was "incipient policy" soon to ripen into a new rule, because the Department's action was justified on the basis of the statute and the existing rule.
A party who asserts a disputed claim before an administrative agency generally has the burden of going forward with the evidence as well as the ultimate burden of establishing the basis for the claim. Young v. Department of Community Affairs, 625 So.2d 831 (Fla.1993); Balino v. Department of Health and Rehabilitative Services, 348 So.2d 349 (Fla. 1st DCA 1977). Environmental Trust and Sarasota Investors failed to satisfy this burden by showing that there was a legal basis for their claim to reimbursement for the cost of the discounts or the markups. Nothing in section 376.3071, Florida Statutes (1995), creates an entitlement to recover these expenses. By the plain language of the statute, reimbursement is limited to the "actual and reasonable costs for site rehabilitation." § 376.3071(12)(d), Florida Statutes (1995).
The cost represented by the series of discounts for providing capital is not an actual cost of the site rehabilitation work. Likewise, a markup for a contractor who adds no value to the work cannot be regarded as an actual cost. Environmental Trust and Sarasota Investors could not prevail on this point even if we were to conclude that the phrase "actual and reasonable costs" is ambiguous. Statutes establishing economic grants or entitlements are strictly construed in favor of the government and against the grantee. See Norman J. Singer, 3 Sutherland Stat. Const. § 63.02 (5th Ed.1992). Therefore, any doubt whether a particular claim for reimbursement is part of the actual cost of the rehabilitation would be resolved against the claimant.
The Department's action in deducting the cost of the discounts is supported not only by the statute but also by the rules in existence at the time the work was done. Subject to exceptions not applicable here, rule 62-773.650(1) prohibits reimbursement for "[i]nterest or carrying charges of any kind." In the present case, the Department *498 concluded that the cost of the discounts amounted to interest on the face amount of the invoices. Interest is not transformed into a reimbursable item merely because the claimant elects to characterize it as a discount. Moreover, the rule also prohibits recovery for "carrying charges of any kind," which means that financial returns to an investment company are not reimbursable, regardless of their characterization. If the Department improperly denies a claim for reimbursement of discounts earned by a factoring agent, that action can be challenged in a section 120.57(1) proceeding. However, the denial of such a claim does not suggest the need for yet another rule to explain all of the possible situations in which a financing cost might constitute interest.
Likewise, the Department's action in denying the markup for Gator Environmental was supported by rules then in existence. Rule 62-773.100(2) provides that requests for reimbursement must apply to costs that are integral to site rehabilitation. The term "integral" is defined in rule 62-773.200(2)(11) as "those costs which are essential to completion of site rehabilitation." Here, the Department determined that it would not pay the markup to a contractor if the site rehabilitation work was completed entirely by the subcontractor. Again, this action is merely an application of the existing rule. The Department is not required to adopt another rule explaining how it will apply the term "integral" in a particular circumstance.
Environmental Trust and Sarasota Investors rely on the fact that the existing rules do not specifically address the discount and markup issues. However, the problem with this approach is that it effectively reverses the burden of establishing entitlement to reimbursement. Proof of entitlement to government benefits cannot rest on a claim that the benefits are not specifically prohibited by law. Rather, the burden is on the claimant to show that a particular benefit is allowed by the law. Otherwise, there would be no end to the bills that might be presented to the state for expenses not specifically prohibited by law.
An agency statement that is the equivalent of a rule must be adopted in the rulemaking process. See, e.g., Christo v. State Department of Banking and Fin., 649 So.2d 318 (Fla. 1st DCA 1995); Florida League of Cities v. Administration Comm'n, 586 So.2d 397 (Fla. 1st DCA 1991). This requirement, carried forward in section 120.54(1), Florida Statutes (Supp.1996), prevents an administrative agency from relying on general policies that are not tested in the rulemaking process, but it does not apply to every kind of statement an agency may make. Rulemaking is required only for an agency statement that is the equivalent of a rule, which is defined in section 120.52(15), Florida Statutes (1996), as a statement of "general applicability."
An agency statement explaining how an existing rule of general applicability will be applied in a particular set of facts is not itself a rule. If that were true, the agency would be forced to adopt a rule for every possible variation on a theme, and private entities could continuously attack the government for its failure to have a rule that precisely addresses the facts at issue. Instead, these matters are left for the adjudication process under section 120.57, Florida Statutes.
It is true the Department made several statements regarding the factoring discounts and the markups, but the statements did not have the effect of rules. The first of these was a statement concerning factoring discounts in an April 21, 1995, memorandum from Bruce French, the Department's Environmental Manager, to Charles Williams, the Department's Environmental Administrator. In the memorandum, Mr. French explained:
Regarding reimbursement applications where the program task organization structure of the applicant may involve any combination of a general contractor, management company, funder and responsible party and any other parties with claims in the application for these entities, only incurred costs of the general contractor and subcontractors including allowable markups are to be considered for reimbursement.

*499 Specifically, invoices from subcontractors, vendors, suppliers and/or the general contractor which were paid a factored (e.g. discounted) amount by a third party capital participant (e.g., funder) represents the actual amount incurred by the entity and subsequently by the general contractor.
This statement appears to be nothing more than an analysis of how the existing prohibition against interest and carrying charges would be applied to a factoring scheme. Mr. French closed the memorandum with a warning that "[m]any versions on this theme of factoring and discounting (e.g. reservation fees) may be encountered when reviewing applications" and directed administrators to refer the "[m]ore creative approaches to capital participation" to the office of the general counsel.
The second agency statement alleged to be a rule is contained in electronic mail by Administrator Williams, apparently to his staff. In this communication dated October 20, 1995, Mr. Williams gave the following directive to reviewers:
if the `GC' [general contractor] was involved with the management of the project during the course of the actual work by subcontractors, [DEP] rules do not preclude them from applying a markup. However, if the `GC' came along after the work was completed by other contractors and their involvement was more of a due diligence exercise to facilitate a funding arrangement by a third party, then the `GC' markup would not be justified, though a markup by the actual funder listed as the PRFCSR could be allowed.
Again, this statement appears to be nothing more than an analysis of the existing rule as it applies to the circumstance in which a general contractor is employed for the apparent purpose of increasing the amount of the bill. In this communication, Mr. Williams is plainly referring to the existing rule.
Arguably, the Department's decision to initiate rulemaking is inconsistent with its claim that a new rule was not necessary. The Department's action makes more sense, though, when considered in the context of the case. At the time rulemaking was initiated, the Department was faced with forty-five petitions under section 120.535, Florida Statutes (1995), challenging its alleged use of non-rule policy. Unfortunately, this litigation by the investment companies may have induced the Department to initiate rulemaking as a defensive measure. In any event, the apparent inconsistency in the Department's position does not compel a conclusion that the agency statements in question had the effect of rules.

III.
In the rule challenge proceeding, the administrative law judge entered a final order invalidating the Department's revised rule 62-773 on markups and factoring discounts. The judge reasoned that the rule could not be applied prospectively because the legislature had abolished the entire reimbursement program, and that it could not be applied retroactively, because the underlying statute creates a vested right to reimbursement. We conclude that the rule is valid and that it applies retroactively to pending applications.
Rule 62-773 cannot be applied to applications for future site rehabilitation work, because reimbursement is no longer available, but that does not render the rule "invalid" as that term is used in section 120.56, Florida Statutes (Supp.1996). The policy of this statute is to make administrative agencies accountable for their own rules. An attempt to promulgate an invalid rule may now result in an award of attorneys' fees against the agency and in favor of the party challenging the rule. See § 120.595(2), Florida Statutes (Supp.1996). This result would be unfair, however, if the rule was valid at the time it was proposed and if the agency has followed the proper rulemaking procedures.
The more difficult aspect of the final order is the holding that rule 62-773 cannot be applied retroactively. In Florida, an administrative rule generally has only prospective application. See Gulfstream Park v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation, 407 So.2d 263 (Fla. 3d DCA 1981). The federal courts also apply this principle. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 109 S.Ct. 468, 102 *500 L.Ed.2d 493 (1988) (a federal rule or regulation is retroactive only if the enabling legislation contains a valid grant of authority specifically allowing the agency to apply the rule retroactively).
An exception may apply, however, if the rule merely clarifies another existing rule and does not establish new requirements. This exception is best illustrated by the decision of the United States Supreme Court in Smiley v. Citibank of South Dakota, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). There, the plaintiff filed suit in California against a bank chartered in South Dakota, alleging that the bank had violated California law by charging excessive late fees on a credit card. The bank argued that federal banking laws allow a national bank to charge interest at the rate allowed in the state of incorporation, and that the late fees were proper because they were a form of interest. After the suit was filed, the Comptroller of the Currency adopted a new rule specifically including late fees in the definition of interest. The Court held that this rule could be applied retroactively to the plaintiff's case, because the rule did not alter the Comptroller's previous interpretation of the term "interest."
As the Smiley decision reveals, the prohibition against retroactive application of administrative rules does not apply to all kinds of rule amendments. On the contrary, retroactive application of a rule may be proper if the rule merely clarifies or explains a previous rule. See, e.g., Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103 (3d Cir.1996); Homemakers N. Shore, Inc. v. Bowen, 832 F.2d 408 (7th Cir.1987); Nussbaum v. Mortgage Serv. Am. Co., 913 F.Supp. 1548 (S.D.Fla. 1995). See also Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 6.6 (Supp.1997). In Pope v. Shalala, 998 F.2d 473 (7th Cir.1993), the court explained that a rule clarifying an unsettled or confusing area of the law can be applied retroactively because it merely "restates what the law according to the agency is and has always been." The court quoted from the analysis by the United States Supreme Court in Manhattan General Equipment Co. v. Commissioner of Internal Revenue Service, 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). There, the Court reasoned that a rule merely clarifying existing policy is "no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." We think the revised rule in the present case falls within this exception.
The existing rule provides that a request for reimbursement must apply to "integral" costs, which are defined as "those costs which are essential to the completion of site rehabilitation." As previously explained, the Department used these provisions to deny unwarranted contractor markups. The challenged rule addressed the subject in the following terms:
(b) Reimbursement shall be limited to actual "incurred costs" as defined in rule 62-773.200(9) and all costs must be incurred by the person responsible for conducting site rehabilitation except as provided in Rule 62-773.350(10); and
(c) Reimbursement of markups shall be allowed only when necessary and documented service has been provided that is integral to site rehabilitation, subject to the limitations provided in rule 62-773.350(9).
This new language merely restates a self-evident proposition existing in the prior rule; a contractor must perform some site rehabilitation work or supervision to qualify for reimbursement.
Likewise, the new language relating to factoring discounts merely restates existing limitations on the right to reimbursement. As stated in the revised rule:
"Incurred costs" means allowable costs that have been paid in full and documented in accordance with Rule 62-773.700 F.A.C. minus any amount prepaid or repaid including rebates, discounts, reservation or commitment fees, commissions, credits or interest.
This language does not add new limitations on the right to reimbursement. According to section 376.3071, Florida Statutes, reimbursement is limited to the "actual costs" of rehabilitation. The existing provisions of rule *501 62-773 prohibit reimbursement for "interest or carrying charges of any kind."
Reviewing courts must give great weight to the intent expressed by the agency in determining whether a revised rule imposes new requirements or merely clarifies existing requirements. See Pope v. Shalala. Here, the Department did not intend to establish any new requirements. On the contrary, the rule was adopted to clarify the provisions of the existing rule on which the Department had been relying to support its position on markups and factoring discounts. The Department had taken a consistent position on these issues in forty-five applications even before the revised rule was formally proposed.
The case for retroactive application is further supported by the fact that the revisions to the rule were proposed at a time when the Department was facing a challenge to the alleged use of non-rule policy. The Department had consistently maintained that a new rule was not necessary, but Judge Hood rejected that argument in favor of a finding that the Department had been applying an incipient non-rule policy. If an administrative agency can apply incipient policy to a pending case (because it is about to adopt a rule), then surely it can apply the rule eventually adopted to codify that policy. Because the proposed rule in this case makes no change in the Department's policy under the existing rule, it can be applied retroactively to pending applications.
The subsequent order assessing attorney's fees against the Department under section 120.595(2), Florida Statutes (Supp.1996), was based on the administrative law judge's erroneous conclusion that the rule is invalid. Because we are reversing the underlying order in the rule challenge proceeding, we must also reverse the order assessing attorney's fees against the Department. We need not determine whether the administrative law judge properly applied the 1996 version of the Administrative Procedure Act, because there is no substantive basis for an award of attorneys' fees.

IV.
In summary, we affirm the Department's final order in the proceeding under section 120.57(1), Florida Statutes (1995), on the ground that it is supported by competent substantial evidence. Likewise, we conclude that the Department was justified in denying the applications on the basis of the existing rule. Therefore, we agree with the result of the final order by Administrative Law Judge Hood in the proceeding under section 120.535, Florida Statutes (1995). In our view, the revised version of rule 62-773 can be applied retroactively because it merely restates the Department's settled interpretation of the existing rule. Consequently, we reverse the final order by Administrative Law Judge Ruff in the proceeding under section 120.56, Florida Statutes (Supp.1996), and the subsequent order assessing attorney's fees under section 120.595(2), Florida Statutes (Supp.1996).
Affirmed in part and reversed in part.
ERVIN, J., concurs.
BENTON, J., concurs in part and dissents in part.
BENTON, Judge, concurring in part and dissenting in part.
I concur in affirming the final order entered by the Department of Environmental Protection in No. 96-4341. This order denied Environmental Trust and Sarasota Environmental Investors, Inc. additional amounts they claimed as reimbursement. Although I agree with the majority that statutory and rule provisions, which antedate the memoranda assailed as unpromulgated rules in No. 97-255, dictate the result in No. 96-4341, I would not disturb the administrative law judge's determination that the memoranda amount to (redundant) unpromulgated rules.
Persuaded that the challenged memoranda should be treated under our cases as unpromulgated rules, I concur in affirming the final order entered by the administrative law judge in No. 97-255, on the ground that the administrative law judge properly applied section 120.535, Florida Statutes (1995). The *502 challengers' standing has not been called into question.
I also concur in reversing the award of costs and fees in No. 97-3937. I do so, however, on the basis that the invalidated rule amendment was proposed before October 1, 1996, the date on which section 120.595(2), Florida Statutes (Supp.1996), took effect. Ch. 96-159, § 44, at 213, Laws of Fla. Cf. Security Mut. Life Ins. Co. of Lincoln, Neb. v. Department of Ins., 707 So.2d 929 (Fla. 1st DCA 1998) (holding that section 120.595(4), Florida Statutes (Supp. 1996), requires awarding fees and costs in the event of a successful challenge to an unpromulgated rule that persisted beyond October 1, 1996); accord Aventura Hosp. and Med. Ctr. v. Agency for Health Care Admin., 20 F.A.L.R. 627, 630 (Div. of Admin. Hearings 1997) (noting that "the courts have consistently found that statutory amendments imposing or increasing an obligation for attorney's fees are substantive in nature"). Repeal of statutory authority for the proposed rule amendment falls, moreover, within the "special circumstances" contemplated by section 120.595(2), Florida Statutes (Supp.1996).
On the merits of the appeal in No. 97-770, I respectfully dissent from reversal outright. I would affirm in part and reverse in part with directions. In the proceeding which gave rise to the appeal, the administrative law judge invalidated the entirety of the proposed rule amendment, although he did so "by halves."
The administrative law judge invalidated the amendment insofar as it proposed to operate retroactively on grounds no statute authorized a rule that would apply retroactively. I would affirm invalidation of the amendment insofar as it proposed to operate retroactively. Retroactive application of the proposed rule amendment is incompatible with the procedural requirements of section 120.57(1)(e), Florida Statutes (Supp.1996), which contemplate "de novo review by an administrative law judge" rather than the deference to which duly promulgated rules are entitled in substantial interest hearings.
The administrative law judge invalidated the amendment insofar as it proposed to operate prospectively on grounds the reimbursement program was at an end or would be by the time the proposed amendment was scheduled to take effect. This finding has not been called into question. On this basis, I would reverse invalidation of the rule amendment insofar as it proposed to operate prospectively, and remand with directions to dismiss that portion of the petition to invalidate the proposed rule amendment as moot.
NOTES
[1] The legislature changed the statute to provide for a pre-approval system for payment of site cleanup, rather than the previously employed reimbursement system. See § 376.3071(12), Fla. Stat. (Supp.1996).