HAWKES, J.,
dissenting.
I respectfully dissent. I have four concerns with the majority opinion. First, I cannot agree that the burden of proof issue was waived by DCF. Second, it was Appellant’s burden to prove funds were available to pay for her requested services. Third, even if DCF had the burden to prove a lack of funds, there was competent, substantial evidence that general revenue funds were not available to pay for *928 Appellant’s requested services. Fourth, the ALJ erred by awarding benefits from 1999 forward when the record shows Appellant’s mother withdrew the 1999 application for benefits.
I. Preservation of the Burden of Proof Issue
The record reflects the ALJ recognized this issue was preserved by noting the parties could proffer further argument post-hearing. Specifically, the ALJ stated:
As far as the burden of proof goes, you can certainly put that in your post-hearing recommended order if you feel like, if — typically there’s not a, you know, a burden of proof for a negative, which I suppose is what the Agency’s position is. But if they [Appellant] show eligibility, and if they show timely application and so forth, at that point I guess the burden would shift to the Agency to show why you didn’t grant the request.
In my opinion, this was an indication of the ALJ’s current thoughts on the issue and not the final word. Thus, DCF’s failure to object should not preclude its challenge to this issue.
II. Burden of Proof Regarding Entitlement to Benefits
In my opinion, the lack of funding is not an affirmative defense analogous to impossibility of performance. Instead, the more appropriate rule is that “[a] party who asserts a disputed claim before an administrative agency generally has the burden of going forward with the evidence as well as the ultimate burden of establishing the basis for the claim.” Envtl. Trust v. State, Dep’t of Envtl. Prot, 714 So.2d 493, 497 (Fla. 1st DCA 1998). “The burden is on the claimant to show that a particular benefit is allowed by the law.” Id. at 498; see also Golfcrest Nursing Home v. State, Agency for Health Care Admin., 662 So.2d 1330 (Fla. 1st DCA 1995) (holding burden is initially on party seeking entitlement to benefit, and only when prima facie case is shown does burden shift to opposing party)-
The fact that other ALJs have determined lack of funding is an affirmative defense is irrelevant since we review legal interpretations de novo. Even if it were relevant, other ALJs have taken the position that it is the claimant who has the burden to prove funds are available. See Parkes v. Dep’t of Children & Family Servs., 2002 WL 1471722 (Fla.Div.Admin.Hrgs.2002); Lopez v. Dep’t of Children & Family Servs., 2002 WL 1471721 (Fla.Div.Admin.Hrgs.2002); Raymond v. Dep’t of Children & Family Servs., 2001 WL 92106 (Fla.Div.Admin.Hrgs.2001); Smith v. Dep’t of Children & Family Servs., 2001 WL 40383 (Fla.Div.Admin.Hrgs.2001). Therefore, in my opinion, Appellant had the burden to prove there were available general revenue funds from which to fund her requested services.
III.Lack of Funds
Even if the burden was shifted, DCF proffered competent, substantial evidence that it lacked general revenue funds from which to fund Appellant’s requested services. Both the Florida Constitution and Florida statutes prohibit agencies from contracting or agreeing to spend any moneys in excess of the amount appropriated to them unless authorized by law. See Art. VII, Sec. 1(c), Fla. Const.; § 216.311(1), Fla.Stat. (2002). Developmentally disabled persons are entitled to receive services only “within available resources,” and DCF has discretion to prioritize how it will distribute funds. § 393.13(3)(c)-(d), Fla.Stat. (2002); see also Dep’t of Health & Rehab. Servs. v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991) (holding budgetary decision-making was within agency head’s executive discretion). The majority focuses on testimony that *929 there were remaining general revenue funds within the Department’s District 15. Yet, testimony also indicated those funds had been contracted out to other agencies, and therefore, the funds were not available to pay for Appellant’s requested benefits. More importantly, whether there were general revenue funds “in the bank” is irrelevant since DCF’s spending plan mandates that general revenue funds may not be used to fund services for people (like Appellant) on the Medicaid Waiver list. The spending plan clearly indicates that all DCF employees are required to comply, not just District 15 employees. Such an instruction is evidence of the lack of funds to pay for Appellant’s requested services.
IV. 1999 Application for Benefits Withdrawn
The ALJ also erred when she awarded benefits to Appellant based on her 1999 application. First, Appellant did not seek a hearing on the alleged 1999 application, as evidenced by her June 2002 petition for hearing which mentioned a “recent” denial of benefits. Second, Appellant foreclosed her own eligibility for benefits in 1999 when her mother withdrew the application for benefits. Although Appellant’s mother testified she applied for and was denied benefits for Appellant in 1999,[1] Appellant’s counsel proffered a letter, which read, in relevant part: ‘Your request for assistance dated May 5th of 1999 has been withdrawn at your request. Reason you did not follow through: Establishing eligibility.” Based on this evidence, there was nothing to support an award of benefits beginning in 1999.
.For all of the aforementioned reasons, I would affirm.

. Appellant's mother testified the denial was due to the fact that she made too much money.